**In re MGS MARKETING, Debtor.**

**CAM/RPC ELECTRONICS, Appellant,**

v.

**Jerome E. ROBERTSON,**
Trustee, Appellee.

**BAP No. NC–89–1054 VMeMo.**
**Bankruptcy Nos. 586–06394–WCM,**
**586–06361–WCM.**
**Adv. No. 88–0153.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted July 20, 1989.

Decided Feb. 26, 1990.

John A. Butler, III, Campeau & Thomas, San Jose, Cal., for appellant.

Richard Lenkelis, Menlo Park, Cal., for appellee.

Before VOLINN, MEYERS and MOOREMAN, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

The debtor purchased computer chips on account from plaintiff-appellee CAM/RPC Electronics, Inc. ("CAM"), pre-petition, and has not paid the purchase price for them. Alleging detrimental reliance upon the debtor's alleged false financial statement, CAM sought either "reclamation" of the proceeds of computer chips, or the imposition of a constructive trust on those proceeds. The Trustee initially resisted and claimed that CAM was indebted to the estate for having received an avoidable preference. Later, the Trustee agreed to compromise by making a substantial payment to CAM, and obtained court approval of the settlement. Hamilton Avnet, Inc. ("Hamilton"), an unsecured creditor, appeals the court's approval of that settlement. Because the Trustee failed to demonstrate a proper factual and legal basis for the settlement, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The debtor, MGS Marketing, Inc. ("MGS"), bought and sold integrated circuits or "chips." Appellant Hamilton and appellee CAM were two of MGS' suppliers.

On October 24, 1986, CAM made its final delivery to MGS after ascertaining that two MGS checks totaling $102,000, given to pay past due payments on invoices for July and August shipments, were collectible. CAM has not been paid for the $139,744.27 due for the October shipment.

On October 30, 1986, Hamilton sued MGS on an unpaid account and caused the sheriff to levy upon its prejudgment writ of attachment. The sheriff seized twenty boxes of chips. Thirteen of the boxes were later identified as having been shipped by CAM.

MGS filed its voluntary Chapter 11 petition on December 31, 1986. On January 15, 1987, Jerome E. Robertson ("Robertson" or "the Trustee") was appointed trustee. After the case was converted to Chapter 7 on May 20, 1987, Robertson continued as trustee.

On February 25, 1988, by stipulation with Hamilton and CAM, the Trustee sold the chips that had been seized under Hamilton's attachment writ. The Trustee obtained $297,900; the parties agree that the chips traceable to CAM brought in $195,000.

On April 11, 1988, CAM filed an adversary complaint "for reclamation of proceeds of property held in constructive trust." CAM alleged that MGS obtained the chips by fraud, specifically by obtaining credit for their purchase through falsified financial statements. CAM sought all the proceeds of the chips sold by the Trustee. The Trustee responded with a general denial and later asserted that the $102,000 paid by MGS to CAM before CAM's October shipment was recoverable as a preference, presumably pursuant to 11 U.S.C. §§ 544(a) or 547.

CAM admitted that it could not substantiate any claim to six of the boxes of chips sold by the Trustee. Accordingly, the court granted the Trustee's motion to reduce CAM's claim to $195,000. The Trustee also moved for summary judgment, contending that CAM did not rely on any financial statements. Substantial evidence had been produced during discovery that

CAM made the October shipment in reliance upon payment for prior shipments.

While the summary judgment motion was pending, Robertson and CAM agreed that the Trustee would pay CAM $75,000 and waive any preference claims in consideration of CAM's waiver of any claims for additional amounts. The Trustee sought court approval for the settlement.

It appears that the proceeds from the chips sold by the Trustee will be the primary source of any payments to creditors. Hamilton, as an unsecured creditor, objected to the settlement, arguing without explanation that the compromise was not in the best interests of the estate. Hamilton argued further that it would be unfair to favor CAM over other unsecured creditors, who for the most part were unpaid suppliers like Hamilton and CAM. By supplemental memorandum filed and served on November 23, 1988, the date of the last of three hearings on the matter, Hamilton contended further that CAM had failed to state a right to reclamation under 11 U.S.C. § 546(c),[1] and that § 546 was CAM's sole remedy and exclusive recourse for obtaining the proceeds from sale of the chips.

The Trustee and CAM were not prepared to argue the issues under § 546(c). The court decided without explanation to approve the compromise. No findings or conclusions were entered. The record does not show or indicate how the settlement presents a preferable alternative course for the Trustee to follow. The basis for the court's order of December 2, 1988, was explicitly "the representations of Trustee and his counsel that said settlement is reasonable and in the best interest of the above-entitled estate." The order was entered on January 17, 1989, preceded by Hamilton's Notice of Appeal on December 22, 1988, naming CAM and the Trustee as appellees.

On appeal, Hamilton argues that the settlement was improper because CAM could not prevail as a matter of law on its adversary complaint, and because the court was not fully informed about the extent of CAM's claim and the law under 11 U.S.C. § 546. In the Trustee's papers and at oral argument, CAM's claim was incorrectly described as extending to the full amount of the proceeds from the sale of the chips, $297,000, instead of the $195,000 as reduced by CAM's concessions. CAM contends that section 546 is not its sole remedy, arguing for the imposition of a constructive trust. The Trustee has not submitted a brief, but Hamilton produced evidence of a belated attempt by the Trustee to disavow the settlement, i.e. a proposed stipulation to set aside the settlement and dismiss the appeal.

## ISSUE

Should the bankruptcy court's approval of the settlement be upheld in the absence of a showing that the settlement benefitted the estate?

## STANDARD OF REVIEW

■ The issues of the applicability and scope of 11 U.S.C. § 546 are questions of law, i.e. statutory construction, that are reviewed *de novo*. *See, e.g., Patterson v. Federal Land Bank (In re Patterson)*, 86 B.R. 226, 227 (9th Cir. BAP 1988) (citing *Benny v. England (In re Benny)*, 812 F.2d 1133, 1140 (9th Cir.1987)). Approving a proposed compromise is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interests of the

---

1. Section 546(c) provides:
   Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—
   (1) such seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and
   (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—
   (A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
   (B) secures such claim by a lien.

estate nor fair and equitable for the creditors. *Sandoz v. Bennett (In re Emerald Oil Co.)*, 807 F.2d 1234, 1239 (5th Cir.1987).

## DISCUSSION

■ Although the bankruptcy court has "great latitude" in authorizing a compromise, it may only approve a proposal that is "fair and equitable." *Woodson v. Fireman's Fund Insur. Co.*, 839 F.2d 610, 620 (9th Cir.1988) (citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380–81 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986)). In evaluating a settlement, the court must consider:

"(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *A & C Properties*, 784 F.2d at 1381.

*Woodson,* 839 F.2d at 620 (additional citation omitted).

■ In his application, the Trustee merely listed generally some applicable factors without elaborating how they applied, i.e. "the attorney's fee of litigating the claim, the complexity of this case, and the cost of collection if successful." It is unclear what testimony was presented, if any, to explain the Trustee's position. Even though the Trustee proposed to pay $75,000 to CAM, nothing was mentioned concerning the strength of CAM's constructive trust claim, which appears to have little merit.

With respect to CAM's claim under the Bankruptcy Code, 11 U.S.C. § 546(c)(1) provides that the Trustee's avoiding and strong arm powers are subject to the statutory or common law rights of a seller of goods to reclaim goods received by the debtor while insolvent if the seller "demands in writing reclamation ... before ten days after receipt of such goods by the debtor." Congress enacted that section to allow application in part of Uniform Commercial Code ("UCC") § 2–702 with respect

to a debtor. 4 *Collier on Bankruptcy* ¶ 546.04[1] at 546–15 & 16 (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 371–72 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86–87 (1978) L.P. King 15th ed. 1988)).

UCC § 2–702(2), as adopted in California where the MGS dispute arose, provides:

Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

It is the majority view that the effect of 11 U.S.C. § 546(c) on the quoted UCC provision is to condition the seller's reclamation remedy against a bankrupt buyer upon the seller's making written demand for the goods within ten days of the debtor's receipt of the goods, whether or not the debtor-buyer has misrepresented solvency. *See, e.g., Hitachi Denshi Am., Ltd. v. Rozel Indus., Inc. (In re Rozel Indus., Inc.)*, 74 B.R. 643, 646 (Bankr.N.D.Ill.1987). It has also been widely held that the reclamation remedy applies solely to the goods, not to their proceeds. *Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 691–92 (9th Cir.1984); *In re Furniture Distributors, Inc.*, 45 B.R. 38, 45–46 (Bankr.D.Mass. 1984); *Party Packing Corp. v. Rosenberg (In re Landy Beef Co.)*, 30 B.R. 19 (Bankr. D.Mass.1983).

■ Consequently, when an unpaid supplier has not complied with the conditions of 11 U.S.C. § 546 and UCC § 2–702, relief is unavailable in equity or under the common law because other remedies have been in effect preempted or supplanted by those statutes. *In re Coast Trading Co.*, 744 F.2d 686, 690 (9th Cir.1984); *Don E. Pratt Oil Operations v. Charter Internat'l Oil Co. (In re Charter Co.)*, 52 B.R. 263, 267 (Bankr.M.D.Fla.1985); Cal.Com.Code

§ 2702, California Code Comment (quoting California State Bar Committee on the Commercial Code, a Special Report, The Uniform Commercial Code, 37 Calif. State Bar J. 117, 151–52 (March–April, 1962)). In other words, when an unpaid seller of goods is unable to avail itself of reclamation under 11 U.S.C. § 546(c) or UCC § 2–702(2), it cannot resort to a common law fraud remedy. *Allstate Fabricators Corp. v. Flagstaff Foodservice Corp. (In re Flagstaff Foodservice Corp.)*, 56 B.R. 899, 908–09 (Bankr.S.D.N.Y.1986).

When pressing for the application of the constructive trust approach, CAM argued that title did not pass due to MGS' fraud. This is inconsistent with the commonly accepted view that in the sale of goods, when passage of title is material but not expressly governed by a specific UCC provision, title passes upon the goods' physical delivery. Because the remedy under UCC § 2–702(2) is in effect a rescission, sales within that section transfer voidable title. *Lewis v. Holzman (In re Telemart Enterprises, Inc.)*, 524 F.2d 761, 765 (9th Cir. 1975).

When the trustee has a strong case, "hazards of litigation" do not justify a settlement by which neither the estate nor the creditors benefit from the trustee's potential recovery. *Emerald Oil*, 807 F.2d at 1239.

## CONCLUSION AND ORDER

The Trustee failed below to demonstrate the providence of the proposed settlement. It may be that there are reasons which would provide a court with a basis for exercising its discretion to approve a settlement of the sort provided for here. If so, the record should indicate what that basis was. Here, the record is barren. We should not be called on to surmise that these proceedings provided any basis for the proper exercise of the court's discretion. We REVERSE the order approving the settlement.