In re MICKEY THOMPSON EN-
TERTAINMENT GROUP,
INC., Debtor.

Michael Goodwin, Appellant,

v.

Mickey    Thompson    Entertainment
Group, Inc.; Thomas M. Casey, Chap-
ter 7 Trustee; United States Trustee;
SFX Motor Sports, Inc.; SFX Enter-
tainment, Inc.; Clear Channel Com-
munications, Inc.; Madison Square
Garden, Inc.; and Danny Thompson,
Appellees.

BAP No. CC–02–1421–MoKMa.
Bankruptcy No. SA 95–13628–JR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 21, 2003.

Filed April 9, 2003.

Robert P. Goe, Goe & Forsythe, LLP, Newport Beach, CA, for Michael Goodwin.

Reem J. Bello, Albert, Weiland & Golden, LLP, Costa Mesa, CA, for Thomas M. Casey, Ch. 7 Trustee.

Craig A. Barbarosh, Pillsbury Winthrop, LLP, Costa Mesa, CA, for SFX Motor Sports, Inc., SFX Entertainment, Inc., Clear Channel Communications.

Before MONTALI, KLEIN and MARLAR, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

A Chapter 7[1] trustee sought approval of a compromise between the bankruptcy estate and certain parties against whom the estate held potential fraudulent transfer claims. A creditor opposed the compromise and a third party offered to purchase the claims for an amount higher than the settlement offer. In response, the trustee changed his strategy, treating his intended action as it really was: a sale of an asset of the bankruptcy estate. At the hearing, however, he renounced that strategy and sought approval of what he once again maintained was a compromise of a controversy. The bankruptcy court agreed with the trustee and approved the compromise. The objecting parties appealed. We REVERSE.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

## I. FACTS

Mickey Thompson Entertainment Group, Inc. ("Debtor") filed its Chapter 7 bankruptcy case on April 10, 1995. Thomas H. Casey was appointed Chapter 7 trustee ("Trustee") on April 21, 1995. The case was closed as a "no-asset" case on February 13, 1998.

After Trustee was informed by creditor Michael Goodwin ("Appellant") that certain assets consisting of contract rights to conduct Motorcross Events[2] may have been omitted from Debtor's schedules and may have been used by Debtor and other entities without remitting proceeds to the estate, he filed a motion to reopen the case in order to conduct discovery, to investigate the potential claims, and to pursue litigation if necessary. On February 1, 2002, the bankruptcy court reopened the case.

After conducting an investigation, Trustee concluded that the evidence gathered by him was "somewhat equivocal." The Trustee cited "suspicious circumstances" surrounding use of the estate's contract rights but stated that he believed that there would be risk and delay in commencing litigation.

In light of this risk and delay, Trustee negotiated a settlement with Danny Thompson, SFX Motor Sports, Inc. dba Clear Channel Entertainment—Motor Sports (formerly PACE Motor Sports, Inc.), SFX Entertainment, Inc. dba Clear Channel Entertainment, Clear Channel Communications, Inc., and Madison Square Garden (collectively, the "Settling Parties"). Settling Parties and Trustee entered into a settlement agreement (the "Agreement") whereby the Settling Parties agreed to pay $40,000 to settle all disputed claims. The Agreement recited the potential claims held by Trustee and the estate against Settling Parties, but did not recite any claims which the Settling Parties may have held against Trustee.[3] The Agreement further provided that it was subject to Court approval and not binding upon or enforceable until an order approving the Agreement was entered.[4]

On June 7, 2002, Trustee filed a motion for order approving the compromise (the "Motion") between him and the Settling Parties. On June 28, 2002, Appellant filed an opposition to the Motion arguing, *inter alia,* that the settlement amount of $40,000 was inadequate and that a third party was willing to make an overbid in the amount of $45,000 to purchase the claims being settled.

In response to Appellant's opposition, Trustee filed a reply on July 2, 2002, which acknowledged that other prospective purchasers might want to purchase the claims. The Trustee asserted in his reply: "If any other parties do in fact seek to purchase the estate's Claims against the Settling

---

2. In particular, Appellant alleged that Debtor owned (but failed to schedule) certain contract rights to conduct American Motorcyclist Association ("AMA") sanctioned Motorcross Events at Anaheim Stadium for at least the 1995 and 1996 seasons. Appellant estimated that the exclusive rights to produce these sanctioned events could be worth up to ten million dollars. Appellant further informed Trustee that principals of Debtor had secretly utilized this estate asset to produce events with another company without remitting any proceeds to the estate.

3. At oral argument on appeal, counsel for Settling Parties was unable to describe any claims that his clients had against the estate that were to be released.

4. The Agreement defined its effective date as "the date on which the order approving [the settlement] is final" and additionally provided that the order "will become final after disposition" of any appeal. *Agreement* at page 2. In light of this provision of the Agreement, the appeal is not moot.

Parties for an amount greater than the $40,000.00 proposed settlement amount, then the Trustee believes *it would be in the best interest of the creditors of the estate to sell the Claims* provided the amount of overbid is received in cash or certified funds in advance of the hearing on the Motion." *Trustee's Reply* at 2 (emphasis added). Trustee further stated that although he believed a compromise with the Settling Parties was appropriate, he was also interested in obtaining the greatest recovery possible.

Trustee then proposed an overbid procedure whereby the first overbid would be in the minimum amount of $45,000 in certified funds and subsequent overbids would be not less than $2,500 greater than the last highest aggregate overbid. He required that overbids be presented in the form of cash or cashier's check, made payable to him. In the conclusion of the reply, Trustee requested the court to "enter an order granting the Motion and authorizing the Trustee to enter into the settlement agreement with the Settling Parties. In the alternative, *if there [are] any prospective purchasers of the estate's Claims at the hearing on the Motion, the Trustee requests that the Court authorize the Trustee to conduct an overbid auction at the hearing ...*" *Id.* at 4 (emphasis added).

The Settling Parties filed their own reply to Appellant's opposition. In it, they argued that the settlement was in the best interests of the estate, that an overbid procedure was inappropriate in the context of a motion to approve a settlement, and that Appellant had not submitted admissible evidence to support his overbid of $45,000.

On July 9, 2002, the court held a hearing on the Motion. At the beginning of the hearing, Trustee's counsel acknowledged that he had received a cashier's check in the amount of $45,000 for the claims against the Settling Parties. Nevertheless—despite Trustee's position in his reply that he would welcome overbids—he stated at the hearing that he still sought approval of the Motion because at the time he entered the Agreement, he believed it was in the estate's best interest.

Counsel for Appellant then stated that in addition to paying $45,000 for the claims, the third party purchaser would pay the estate fifteen percent of any monies collected on those claims. He also noted that the settlement was essentially a sale of an asset: selling a claim for $40,000, without the estate receiving anything else of value, such as a release of known and described claims *against* the estate.

After hearing the arguments of the various parties, the court approved the Motion. The court ruled that the proposed $5,000 overbid was not substantial enough to affect the best interests of creditors and that the evidence of willingness to pursue an auction process with an initial overbid of $5,000 was not sufficient to warrant substitution of the court's judgment for the business judgment of Trustee. The court did not attempt to evaluate the proposed overbidder's additional offer to pay the estate fifteen percent of any recovery from the Settling Parties.

The bankruptcy court entered its order granting the Motion on July 30, 2002. Appellant filed a timely notice of appeal on August 7, 2002.

## II. ISSUE

Did the bankruptcy court abuse its discretion in approving Trustee's settlement with the Settling Parties pursuant to Rule 9019?

## III. STANDARD OF REVIEW

The bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion. *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1380 (9th Cir.), *cert. denied*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986); *CAM/RPC Elecs. v. Robertson (In re MGS Mktg.)*, 111 B.R. 264, 266–67 (9th Cir. BAP 1990).

Under the abuse of discretion standard, we cannot reverse the bankruptcy court's ruling unless we have a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir.1996).

## IV. DISCUSSION

### A. *Trustee's Standing*

We question sua sponte Trustee's standing because he does not appear to have been appointed formally as trustee upon the reopening of the case in 2002. As we have previously explained, the closing of a case terminates the services of the case trustee, and the reopening of the case will not lead to the appointment of a trustee unless the court determines that a trustee is necessary. *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 913–14 (9th Cir. BAP 1999).

The controlling rule is Rule 5010, which provides that in a reopened chapter 7 case, a "trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case." Fed. R. Bankr.P. 5010. While there is no order reappointing Trustee, a trustee is necessary in the circumstances of this case. Moreover, the United States trustee, by virtue of supervising this reopened case for more than one year without raising the issue, has acquiesced in Trustee's service as trustee. We take this to constitute a de facto reappointment by the United States trustee.

Thus, although Trustee initially lacked standing to make the motion to reopen before his de facto reappointment, any standing issue has been waived by silence and by substantial participation by parties who did have standing to seek reopening.

### B. *Compromise of Controversy*

"Although the bankruptcy court has 'great latitude' in authorizing a compromise, it may only approve a proposal that is 'fair and equitable'" to the creditors. *MGS Marketing*, 111 B.R. at 267, quoting *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir.1988). The settlement should be in the best interests of the estate (*MGS Marketing*, 111 B.R. at 266–67) and "reasonable, given the particular circumstances of the case." *A & C Properties*, 784 F.2d at 1381. And while a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter, the trustee "has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *Id.*

In determining the "fairness, reasonableness and adequacy" of a proposed compromise (*id.*), a bankruptcy court must consider:

(a) The probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

*Id.*

On this record, Trustee has not met his burden of demonstrating that the compromise is fair and equitable. In par-

ticular, he has not shown how the settlement is in "the paramount interest of creditors." Instead, Trustee's own admissions in his reply, coupled with the $45,000 overbid, indicate that the interests of creditors would be better served by allowing interested parties to offer bids to purchase the estate's claims against the Settling Parties. Trustee's support of the settlement at the hearing was likewise ambivalent, as he noted that he believed the settlement was in the best interests of the estate *when he entered it* [5] and that he was contractually bound by the Agreement.[6]

In addition, this settlement is in essence a sale of potential claims to the Settling Parties. While the Agreement purports to act as a mutual release of claims, no party has identified any claims which the Settling Parties could assert against the estate or Trustee. The record does not contain any evidence that a release of claims by the Settling Parties has value.

Thus, the settlement is in reality a purchase by the Settling Parties of a chose in action of the estate and for which another entity has offered a higher price in circumstances that invite a competitive auction that could yield a considerably higher price. Settling Parties were free to bid against the third party overbidder.

We agree with the Third Circuit that the disposition by way of "compromise" of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim, which transaction simultaneously implicates the "sale" provisions under section 363 as implemented by Rule 6004 and the "compro-

mise" procedure of Rule 9019(a). *Myers v. Martin (In re Martin),* 91 F.3d 389, 394–95 (3rd Cir.1996); *accord In re Telesphere Communications, Inc.,* 179 B.R. 544, 552 n. 7 (Bankr.N.D.Ill.1994); Reynaldo Anaya Valencia, *The Sanctity of Settlements and the Significance of Court Approval: Discerning Clarity from Bankruptcy Rule 9019,* 78 OR. L. REV. 425, 480–85 (1999).

We likewise agree with the Third Circuit that a trustee's fiduciary duty to maximize the assets of the estate trumps any contractual obligation that a trustee arguably may incur in the course of making an agreement that is not enforceable unless it is approved by the court. *Martin,* 91 F.3d at 395. Everyone who deals with a bankruptcy trustee in a transaction that is not in the ordinary course of business is charged with knowledge that the law may require court approval and that a trustee has an obligation to present all relevant facts to the court, including whether there is a more attractive solution than that which the trustee has negotiated. *Id.*

In short, on this record we specifically reject the argument advanced by Settling Parties and Trustee that the procedures normally contemplated by section 363 motions do not apply in the context of the review of settlements under Rule 9019(a) where the result of the transaction would be to dispose of property of the estate. Rather, section 363 and Rules 6004 and 9019(a) may overlap when property of the estate would be disposed of by way of a settlement.

When confronted with a motion to approve a settlement under Rule 9019(a), a

---

**5.** While the settlement might have met the standards of *A & C Properties* when it was agreed upon and when the Motion was filed, we must reverse because Trustee changed the rules by setting forth an overbid procedure in his reply and Appellant played by those changed rules. Trustee then reneged and, without explanation, departed from those procedures at the hearing.

**6.** Trustee did not explain how he was contractually bound by the Agreement when the terms of the Agreement specifically provided that it was subject to court approval and not binding on the parties absent a court order approving the settlement.

bankruptcy court is obliged to consider, as part of the "fair and equitable" analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale. Whether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation.[7]

It follows that the consideration that would flow to the estate from the $40,000 "compromise" of the cause of action based on Debtor's unscheduled contract rights also functions as a "price" in a sale. The possibility that someone else may be willing to pay a higher price triggers the prospect of an auction that could yield an even higher price.

Although the bankruptcy court treated the proposed $5,000 overbid as not material, we note that not only was it a 12.5 percent increase in price, but it also included an offer to pay the estate fifteen percent of any proceeds to be recovered in litigation against Settling Parties.[8] Moreover, entertaining overbids often triggers a bidding sequence that may lead to a much higher price. In short, the court's findings do not support its conclusion.

Here, in light of the post-settlement developments and Trustee's own admission in his reply that an overbid procedure would be in the best interests of creditors, we have the definite and firm conviction that the bankruptcy court committed a clear error of judgment in concluding that the settlement was in the best interests of the estate, particularly where the party opposing the settlement was merely complying with rules for overbids that Trustee set forth in his reply.

### V. CONCLUSION

Because Trustee was unable to demonstrate that the Agreement was in the best interests of the estate, we REVERSE.

---

**7.** We are not suggesting that every compromise of a bona fide controversy presented to a bankruptcy court under Rule 9019 must pass muster as a sale under section 363. We are sensitive to the different considerations that come into play. But the inescapable fact in this case is that the label "compromise" does not accurately characterize the transaction. Functionally, there was no compromise at all. Trustee *simply attempted to sell to prospective* defendants for $40,000 his cause of action against them.

**8.** The record does not contain sufficient evidence of the probable value of that offer, although we note that rights of action under the trustee's bankruptcy avoiding powers may be transferred for a consideration that may include a guaranteed minimum recovery for the estate (a "price") and that may provide for sharing of additional proceeds of the litigation. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774, 780–82 (9th Cir.1999); *Briggs v. Kent (In re Prof'l Inv. Props.),* 955 F.2d 623, 625–26 (9th Cir. 1992); *cf., Wells Fargo Bank, N.A. v. Guy F. Atkinson Co. (In re Guy F. Atkinson Co.),* 242 B.R. 497, 501–02 (9th Cir. BAP 1999).