FILED

JAN 31 2012

NOT FOR PUBLICATION

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                  )
                                        )    BAP No. CC-11-1428-PaMkLa
SHMUEL ERDE,                            )
                                        )    Bk. No. LA 09-25942-PC
               Debtor.                  )
                                        )    Adv. No. LA 09-01829-PC
_____         )
                                        )
SHMUEL ERDE,                            )
                                        )
               Appellant,               )
                                        )
v.                                      )    **M E M O R A N D U M**[1]
                                        )
RUSSELL SINGER; ADOBE OIL               )
DEVELOPMENT CORPORATION; PORT           )
PROPERTIES, INC.; CAROLYN A.            )
DYE, Chapter 7 Trustee,                 )
                                        )
               Appellees.               )
_____         )

Submitted Without Oral Argument
on January 20, 2012

Filed - January 31, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Chief Bankruptcy Judge, Presiding

_____

Appearances:   Appellant Shmuel Erde pro se on brief; James A.
               Dumas of Dumas & Associates on brief for Appellee
               Carolyn A. Dye, Chapter 7 Trustee; John B. Taylor
               of the Law Offices of John B. Taylor on brief for
               Appellees Russell Singer, Adobe Oil Development
               Corporation, and Port Properties, Inc.

_____

_____

   [1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

1

Before: PAPPAS, MARKELL and LAFFERTY,[2] Bankruptcy Judges.

In this appeal, appellant chapter 7[3] debtor Shmuel Erde ("Erde") appeals the bankruptcy court's orders denying his two Civil Rule 59(e)[4] motions. We AFFIRM.

**FACTS**

The disputes in this appeal go back to 1999, when Erde lent money to Wallace P. Moriarty ("Moriarty"). Moriarty defaulted on the loan, Erde sued him in state court, and, in 2002, recovered two money judgments against Moriarty totaling $450,000 (the "Moriarty Judgments"). Also in 1999, Erde guaranteed a loan to Moriarty made by Russell Singer, Adobe Oil Development Corp., and Port Properties, Inc. (the "Singer Parties"). When Moriarty defaulted on these loans from the Singer Parties, Erde alleged that he paid the Singer Parties $350,000 under terms of his guaranty. Erde also alleged that Moriarty had paid Singer $1.5 million, overpaying Singer by $1.1 million, thereby "parking" those assets with Singer, beyond the reach of Erde, who was attempting to collect from Moriarty. We refer to these 1999 transactions involving Moriarty as the "Moriarty Transactions."

---

[2] The Honorable William J. Lafferty, III, U.S. Bankruptcy Judge for the Northern District of California, sitting by designation.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, or to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are designated as "Civil Rules."

[4] Civil Rule 59(e) is made applicable in bankruptcy proceedings by Rule 9023.

2

Between 2002 and 2007, there were several lawsuits among the parties. In addition to Erde's suits against Moriarty, the parties were also involved in Wieselman v. Moriarty, no. SC074205 (Los Angeles Superior Court October 2002), an action in which the parties attempted to litigate their respective liabilities regarding the 1999 Moriarty Transactions.

After substantial litigation efforts, on May 16, 2007, Erde and the Singer Parties entered into a settlement agreement to resolve the disputes among them relating to the 1999 Moriarty Transactions (the "2007 Settlement Agreement"). The key terms of that settlement included:

> 5c. It is specifically understood that Shmuel Erde and Rohelle Erde hereby release [the Singer Parties] from any and all claims, whether arising as a result of the [Moriarty Transactions] or any other potential cause of action.
>
> 7a. In full and complete consideration for Shmuel Erde's and Rohelle Erde's release, promises and undertakings as set forth in this Agreement, the Singer defendants agree to pay to Shmuel and Rohelle Erde the total sum of One Hundred Thousand ($100,000.00) Dollars as the Settlement Sum.

2007 Settlement Agreement at 4-5. The Singer Parties paid the $100,000 settlement sum to the Erdes on May 15, 2007.

Erde originally filed for relief under chapter 11 on June 23, 2009. On July 2, 2009, Erde, now acting as debtor in possession, commenced an adversary proceeding against the Singer Parties. The original complaint, which was not in traditional form, included a "cause of action" alleging:

> Moriarty borrowed less than $300,000 from Singer, but paid back over $1,500,000, overpaying Singer by $1,100,000. As part of settling with [Erde], Moriarty assigned his rights against Singer to [Erde]. Erde sued Singer to collect the $1,100,000 and the case was

3

in trial when [Erde] filed the Bankruptcy Petition herein.

Thereafter, Erde filed two other adversary proceedings against the Singer Parties (Nos. 09-1832 and 09-1875) both alleging a similar claim. On October 15, 2009, Erde filed an Amended Complaint in the original action, consolidating the three complaints. The relief sought in the Amended Complaint was: "To declare the $2,000,000 Moriarty paid to Singer as a preference, deduct $450,000 from it, which Singer earned for funding the Singer's loans to Moriarty, and order Singer to turn over the balance as Property of the Estate."[5]

In response to the Amended Complaint, the Singer Parties filed a counterclaim against Erde on November 19, 2009, alleging that the three adversary proceedings had been filed in breach of the 2007 Settlement Agreement.

In June 2010, the bankruptcy court granted a summary judgment against Erde in favor of the Singer Parties. The bankruptcy court held that Erde could not assert a preference claim against the Singer Parties because the property transferred was not property of the debtor before the transfer. Additionally, the court determined the transaction could not be considered a fraudulent transfer as to Erde because it involved Moriarty's alleged overpayment of a debt owed to Singer, and under California law, only a third-party creditor can assert such

[5] Although Erde filed the Amended Complaint in AP 09-1875, the parties and the court considered it the operative complaint in 09-1829. After the filing of the Amended Complaint, most of the pleadings and papers were filed in 09-1829.

4

a claim. Additionally, even if Erde could assert the claim, it would be barred by the three-year statute of limitations applicable to contract disputes in California.

Erde filed a motion asking the bankruptcy court to reconsider the summary judgment order on June 30, 2010. After denial of the reconsideration motion, on July 27, 2010, Erde next filed a motion for new trial under Civil Rule 59. The bankruptcy court held a hearing on the motion for new trial on September 14, 2010, at which Erde appeared pro se and the Singer Parties were represented by counsel.[6] The bankruptcy court denied that motion based on findings of fact and conclusions of law stated by the court on the record at the hearing. A transcript of that hearing is not available.

Erde appealed the denial of the motion for a new trial to the BAP on November 29, 2010. The Panel dismissed that appeal as interlocutory on May 20, 2011. Erde v. Singer, BAP no. 10-1475 (9th Cir. BAP May 20, 2011).

On January 18, 2011, Erde's chapter 11 case was converted to chapter 7. Carolyn A. Dye was appointed chapter 7 trustee ("Trustee").

Also in early 2011, Moriarty filed for protection under chapter 7 in the Bankruptcy Court for the Northern District of California. In re Wallace P. Moriarty, Case no. 11-10019-RR. In response to Trustee's apparent disinterest in pursuing Erde's claims against Moriarty in Moriarty's bankruptcy case, at his

---

[6] On August 23, 2010, this bankruptcy case and adversary proceedings were reassigned from retiring Judge Samuel Bufford to Chief Judge Peter Carroll.

5

request, the bankruptcy court in the Erde case ordered that the Moriarty Judgments be abandoned to Erde by Trustee.

> ORDERED, that in the event the Trustee fails to file either a complaint objecting to the non-dischargeability of the Moriarty Judgments or a motion for extension of the deadline to object to the non-dischargeability of the Moriarty Judgments in the Moriarty Bankruptcy by April 21, 2011, then the Moriarty Judgments shall be deemed abandoned by the Trustee under 11 U.S.C. § 554(b) on April 21, 2011[.]

Order at 1, April 19, 2011.

The bankruptcy court's summary judgment against Erde effectively doomed his claims against the Singer Parties in the bankruptcy court. However, the summary judgment did not dispose of the Singer Parties' counterclaim for Erde's contractual violation of the 2007 Settlement Agreement.

Trustee entered into negotiations with the Singer Parties. The Singer Parties had been subjected to six different lawsuits with Erde between 2002 and 2010, and they apparently desired a "definitive conclusion" to the existing, and any potential, litigation between themselves and Erde. The parties therefore entered into a settlement agreement (the "2011 Settlement Agreement") that they announced to the bankruptcy court at a hearing on May 26, 2011. Trustee and the Singer Parties agreed in material part that the adversary proceedings would all be dismissed with prejudice, the Singer Parties would not receive any monetary damages for their counterclaim, and would pay Trustee $5,000 in cash; and that "[t]he Trustee and [the Singer Parties] shall execute a mutual and general release of claims . . . which, inter alia, shall release any and all claims which the Debtor has been asserting or could potentially assert against

6

the [Singer Parties], including any and all claims arising out of the Debtor's alleged status as a creditor or assignee from Defendant Moriarty."

Trustee and the Singer Parties filed a Stipulation for Settlement and Entry of Judgment on June 3, 2011. Trustee filed a motion for approval of the 2011 Settlement Agreement, subject to negative notice, on June 3, 2011. Erde received notice of Trustee's motion by mail. Neither Erde nor any other party filed any opposition or objection to the motion to approve the 2011 Settlement Agreement, and on June 23, 2011, an order approving the settlement was entered by the bankruptcy court (the "Singer Order").

On July 5, 2011, Erde filed a motion under Civil Rule 59 to amend the Singer Order to remove all references therein to the Moriarty Judgment. Erde's motion argued that because the Moriarty Judgments had been abandoned by Trustee prior to entry of the Singer Settlement, Trustee had no right to settle any claims associated with the Moriarty Judgments. Both the Singer Parties and Trustee opposed Erde's motion. The bankruptcy court denied the motion to amend on July 26, 2011, in an order indicating it was based on "findings of fact and conclusions of law stated orally and recorded in open court[.]" A transcript of the July 26, 2011 hearing is not in the record or in the bankruptcy court docket.

On July 11, 2011, the bankruptcy court entered a judgment in the adversary proceeding (the "Singer Judgment") implementing the 2011 Settlement Agreement. It granted a money judgment in favor of the bankruptcy estate and against the Singer Parties for

7

$5,000, and decreed that the Singer Parties would receive no monetary damages on their counterclaim. A critical feature of the Singer Judgment is the following prohibitory language:

> The trustee, Carolyn Dye, and defendants Shmuel Erde and Rohelle Erde are hereby enjoined and prohibited from filing suit against cross-claimants Russell Singer, Adobe Oil Development Corp., and Port Properties, Inc. on account of any and all sums of money, accounts, claims, rights, damages, demands, expenses (including but not limited to attorneys' fees and costs), actions and causes of action, of whatsoever kind or nature, whether known or unknown, suspected or unsuspected, which the Trustee, on behalf of the Estate, now owns, holds, has or claims to have, or at any time theretofore owned, held, had or claimed to have, including without limitation any claim arising out of litigation previously or now pending between [] Shmuel Erde and his non-debtor spouse, Rohelle Erde and Russell Singer, Adobe Oil Development Corp. and Port Properties, Inc. and any claim arising out of the alleged status of either Shmuel Erde or Rohelle Erde as a creditor or assignee of a certain Wallace P. Moriarty.

As he had done with the Singer Order, Erde filed a Civil Rule 59 motion to amend the Singer Judgment on July 19, 2011, in which he again requested removal of all references to the Moriarty Judgments from the Singer Judgment. The bankruptcy court also considered this motion at the July 26 hearing, and in an order entered October 26, 2011, the court denied Erde's motion to amend the Singer Judgment.

Erde filed a timely appeal of the orders denying the motions to amend the Singer Order and Singer Judgment on August 5, 2011.

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and § 157(b)(2)(A) and (O). We have jurisdiction pursuant to 28 U.S.C. § 158.

8

**ISSUES**

1. Whether the bankruptcy court abused its discretion in approving the 2011 Settlement Agreement.

2. Whether the bankruptcy court abused its discretion by denying Erde's motions under Rule 59 to amend the Singer Order and the Singer Judgment.

**STANDARDS OF REVIEW**

We review the bankruptcy court's decision to approve a compromise for an abuse of discretion. Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003).

We review the bankruptcy court's decision to deny a Civil Rule 59 motion for abuse of discretion. Kole v. Carlson, 596 F.3d 608, 611 (9th Cir. 2010).

In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009). If the correct legal rule was applied, we then consider whether its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. Only in the event that one of these three apply are we then able to find that the bankruptcy court abused its discretion. Id.

///

///

///

///

**DISCUSSION**

**I.**

**The bankruptcy court did not abuse its discretion in approving the 2011 Settlement Agreement.**

Although Erde objects in this appeal to the bankruptcy court's denial of his motions to amend the Singer Order and Singer Judgment, a fair reading of his briefs reveals that he is, at bottom, challenging the bankruptcy court's approval of the 2011 Settlement Agreement. We therefore first review whether the bankruptcy court erred in approving the compromise between Trustee and the Singer Parties, before moving to Erde's specific challenge, that Trustee had no authority to settle the Moriarty Judgments.

Rule 9019(a) provides that, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. . . ." The bankruptcy court is vested with considerable discretion in approving compromises and settlements. Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988). To approve a compromise, the bankruptcy court must be satisfied that its terms are "fair, reasonable and equitable." Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1382 (9th Cir. 1986). In assessing the reasonableness of a compromise, the bankruptcy court should consider:

> (a) The probability of success in the litigation;
> (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id.

In this case, Trustee, in her motion to approve the agreement, addressed the A&C Props. factors:

Probability of success in the litigation. Trustee noted that Erde had filed six lawsuits against the Singer Parties that would be resolved by the compromise. Four of the six had been filed even after Erde had executed a broad, general release of the Singer Parties in connection with the 2007 Settlement Agreement, and had been paid $100,000. It also appeared that Erde had been declared a vexatious litigant in the state court proceedings for his pursuit of the Singer Parties, and some of the claims he made against Moriarty were barred by the statute of limitations. And most importantly, the Singer Parties' counterclaim against the bankruptcy estate appeared to be viable.

From these facts, the bankruptcy court could reasonably conclude that continued litigation of the claims in the Amended Complaint would be fruitless.

The difficulties, if any, to be encountered in the matter of collection. Any attempt to collect from Moriarty or the Singer Parties would involve considerable challenges. Indeed, Moriarty had already filed a chapter 7 case in the Northern District of California, and claimed to have few reachable assets.

The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. Although not particularly complex, the claims by Erde against Moriarty, and the continuation of the litigation against the Singer Parties, would necessarily involve a "substantial amount of attorney's fees," delays and inconvenience.

The paramount interest of the creditors and a proper deference to their reasonable views. No creditor objected to the 2011 Settlement Agreement. Indeed, even Erde had not objected to the merits of that compromise. The bankruptcy court could also have noted that the compromise provided $5,000 to creditors, whereas it was uncertain if there would be any funds available for creditors if the litigation continued.

In short, the bankruptcy court had before it sufficient information to conclude that the A&C Props. criteria were satisfied and, especially in view of no opposition from any party, the 2011 Settlement Agreement was properly approved.

Erde did not address any of the A&C Props. criteria in his briefs. Additionally, Erde conceded that Trustee had authority to enter into a compromise. Instead, Erde's challenge focuses upon the authority of Trustee, in connection with the 2011 Settlement Agreement, to restrict Erde from pursuing claims against Moriarty through the Singer Parties.

Erde based his challenge on the bankruptcy court's decision to order abandonment of the Moriarty Judgments. That order included both the two Moriarty Judgments for $450,000, as well as the claim that the Singer Parties had possession of Moriarty's assets and were shielding them from Moriarty's creditors, including Erde.

Erde is correct that the Moriarty Judgments were abandoned and he was free to pursue them. However, the flaw in his argument is that he believed this allowed him to pursue a claim against the Singer Parties. As the Singer Parties and Trustee repeatedly reminded the bankruptcy court, Erde had released any

12

and all claims against the Singer Parties associated with the Moriarty Judgments in the 2007 Settlement Agreement. Erde received considerable compensation for that release, $100,000. In other words, the abandonment order indeed turned over to Erde the Moriarty Judgments, and the theoretical claim against Moriarty through the Singer Parties. However, Erde had voluntarily and for compensation released the Singer Parties from any and all claims, whether arising as a result of the Moriarty Transactions or "any other potential cause of action." 2007 Settlement Agreement at ¶ 5c. In short, Erde could pursue his claims against Moriarty through any channel, but he had voluntarily relinquished any claim against and through the Singer Parties.

Under these circumstances, the bankruptcy court did not abuse its discretion in approving the 2011 Settlement Agreement despite its earlier abandonment order.

## II.

**The bankruptcy court did not abuse its discretion in denying Erde's Civil Rule 59 motions to amend the Singer Order and Singer Judgment.**

As discussed above, Erde basically challenges the 2011 Settlement Agreement. His sole rationale is that the Moriarty Judgments had been abandoned to him by Order of the bankruptcy court, and that Trustee had no authority to interfere with Erde's pursuit of them. Erde chose to pursue this argument via an amendment to the Singer Order and Singer Judgment through Civil Rule 59 motions.

Civil Rule 59, made applicable in bankruptcy proceedings by Rule 9023, permits a party to seek amendment of a judgment or a

13

new trial.[7] <u>Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.</u>, 248 F.3d 892, 899 (9th Cir. 2001). Although Civil Rule 59(e) permits a court to reconsider and amend a previous order, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." <u>Kona Enter., Inc. v. Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." <u>Id.</u>

Erde's argument in this case does not meet the requirements

---

[7] **Rule 59.** New Trial; Altering or Amending a Judgment

(a) In General.

(1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows: . . . (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment. . . .

(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

14

for application of Civil Rule 59. Simply put, Erde received notice of Trustee's intent to seek approval of the 2011 Settlement Agreement, and the deadline for filing any objections. Erde failed to object when he could "reasonably" have done so, and instead waited another month to raise his objection through his motions.

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Kona Enters., 229 F.3d at 890. Erde argues that the bankruptcy court committed clear error by approving a settlement agreement which was inconsistent with its earlier ruling on abandonment. However, when an appellant argues that the bankruptcy court committed clear error in its oral findings and conclusions, the Bankruptcy Rules, the case law, and this Panel's Rules require that the appellant provide a transcript of the hearing at which the bankruptcy court recited those findings and conclusions. Rule 8009(b)(9) (providing that excerpts of record shall include transcripts, if required by BAP rule); 9th Cir. BAP R. 8006-1 ("The excerpts of the record shall include the transcripts necessary for adequate review in light of the standard of review to be applied to the issues before the Panel."); McCarthy v. Prince (In re McCarthy), 230 B.R. 414, 416-17 (9th Cir BAP 1999). Erde has not submitted a transcript of the July 26, 2011, hearing so we cannot effectively review the bankruptcy court's findings and conclusions.

In denying Erde's motion for amendment of the Singer Order,

15

the bankruptcy court stated in its written order, "having considered the pleadings, evidentiary record, and argument of counsel, and based upon findings of fact and conclusions of law stated orally and recorded in open court." At the same hearing, the court heard argument on Erde's motion to amend the Singer Judgment. Its order denying that motion makes a similar observation.

We lack a transcript of the hearing on July 26, 2011, where the bankruptcy court announced its oral findings and conclusions. A transcript is not available on the court's docket, nor is there any other indication in the record where the bankruptcy court explains its reasons for denying Erde's Civil Rule 59 motions. When the inadequacy of the record provided to the Panel affords little choice but to summarily affirm, we may do so. Ehrenberg v. Cal. State Univ., Fullerton Found. (In re Beachport Entm't), 396 F.3d 1087-88 (9th Cir. 2005). Since the lack of a transcript of the relevant hearing prevents us from effectively reviewing the bankruptcy court's reasons for denying the motions, we cannot say that the bankruptcy court abused its discretion in entering those orders. We therefore AFFIRM the bankruptcy court's orders denying Erde's motions to amend.

**CONCLUSION**

We AFFIRM the bankruptcy courts orders denying Erde's motions to amend the Singer Order and Singer Judgment.

16