**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 17 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re:  AGUINA AGUINA, | No.    22-60005 |
| Debtor, | BAP No. 21-1163 |
| ------------------------------ | |
| AGUINA AGUINA, | MEMORANDUM[*] |
| Appellant, | |
| v. | |
| CHOONG-DAE KANG; et al., | |
| Appellees. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Faris and Lafferty III, Bankruptcy Judges, Presiding

Submitted January 9, 2023[**]
Pasadena, California

Before: CALLAHAN, R. NELSON, and H.A. THOMAS, Circuit Judges.

Chapter 7 debtor Aguina Aguina appeals from the Bankruptcy Appellate

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Panel for the Ninth Circuit (BAP), which affirmed the bankruptcy court's approval of a settlement agreement between the bankruptcy trustee, Karl T. Anderson, and Aguina's primary creditors: his ex-wife, Choong-Dae Kang, and her siblings (Kang Parties). *In re Aguina*, No. CC-21-1163, 2022 WL 325579, at \*1. We review the BAP's decision de novo and "apply the same standard of review that the BAP applied to the bankruptcy court's ruling"—here, abuse of discretion. *In re Ahaza Sys., Inc.*, 482 F.3d 1118, 1123 (9th Cir. 2007). We have jurisdiction pursuant to 28 U.S.C. § 158(d). We affirm.

1. "Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to appeal that order." *Matter of Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983). The trustee argues that Aguina lacks standing because "there is no reasonable possibility" that the bankruptcy estate, after satisfying all of its debts, will have a surplus available with which to pay Aguina. We disagree. If we were to reverse the BAP's decision and order that it vacate the bankruptcy court's approval of the settlement agreement, there would exist a possibility—however remote—that the family court would make determinations concerning community property and community debt that would, upon satisfaction of the bankruptcy estate's debts, produce a surplus for Aguina.

2

Because Aguina is thus not "hopelessly insolvent," he has standing to appeal the BAP's order. *See id.*

2. A bankruptcy court abuses its discretion either (i) by applying an incorrect legal rule for the sort of relief requested (an issue which we review de novo), or (ii) by applying the correct legal rule in a way that is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Taylor*, 599 F.3d 880, 887–88 (9th Cir. 2010). Here, the bankruptcy court correctly applied the four-factor test set forth in *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), to determine that the settlement agreement between the trustee and the Kang Parties was fair and equitable. That test requires a court reviewing a bankruptcy settlement agreement to consider "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* While reasonable minds might disagree about its conclusions, the bankruptcy court's application of the *A & C Properties* test was logical, plausible, and supported by inferences that could be drawn from facts in the record. *See id.* ("The law favors compromise and not litigation for its own sake, . . . and as long as the bankruptcy court amply considered the various factors that determined the

3

reasonableness of the compromise, the court's decision must be affirmed.")
(citation omitted).

First, the court considered the paramount interest of the creditors. *See id.*
The court noted that the seven remaining claims in the bankruptcy case would be
resolved by the agreement, five of them by voluntary withdrawal and two of them
by using the funds the Kang Parties would give to the trustee as part of the
settlement. Given that the agreement would resolve all of the remaining creditors'
claims, the court did not abuse its discretion in concluding that that this factor
supported approval of the agreement.

Second, the court considered the complexity of the litigation, as well as any
related expense, inconvenience, and delay. *See id.* The court found that Aguina had
been litigating with the Kang Parties for many years and that a rejection of the
proposed agreement would potentially lead to many more years of litigation,
adding expense, inconvenience, and delay for all concerned parties. Since the
settlement would bring the litigation to an end, the court plausibly concluded that it
would be "very wise" and "very advantageous" to approve the settlement.

Third, the court considered any difficulties to be encountered in collection,
namely the collection of funds that would have to change hands in fulfillment of
the settlement agreement. *See id.* On the record, counsel for the Kang Parties
represented that he had all of the promised funds in a trust account and was

prepared to facilitate collection by the trustee. The court did not abuse its discretion in relying upon this representation to conclude that this factor also supported approval of the agreement.

Fourth and finally, the court considered the probability of success in the litigation over the dissolution of Aguina's and Choong-Dae Kang's marriage. *See id.* The court noted that the proposed agreement would result in a waiver of claims by the Kang Parties, including the waiver of any claims Choong-Dae Kang was pursuing in the dissolution action. Since the settlement would resolve the litigation without placing any new obligations on Aguina, it was logical for the bankruptcy court to conclude that the agreement was a preferable alternative to continuing litigation.

3. Aguina's objections to the bankruptcy court's ruling are without merit. Though not clearly articulated by Aguina, his strongest objection is that the settlement agreement should be reversed because it is not "in the best interests of the estate." *See In re Mickey Thompson Ent. Grp., Inc.*, 292 B.R. 415, 422 (9th Cir. BAP 2003). Aguina states that Choong-Dae Kang possesses "numerous properties and great wealth" which "most likely have a community property component," and that Kang therefore possesses "property belonging to Aguina and to the Bankruptcy Estate." He thus implies that (i) the trustee's calculations do not

5

account for these potential assets, and (ii) the proposed settlement is therefore unfair and inequitable. We reject these contentions.

In filing for bankruptcy, all of Aguina's legal and equitable interests, including all of Aguina's interests in community property, became the property of the bankruptcy estate. *See* 11 U.S.C. § 541(a). The bankruptcy court therefore came to have exclusive jurisdiction over all of Aguina's interests in community property, despite ongoing community property disputes in Aguina's dissolution proceedings with Choong-Dae Kang. *See In re Teel*, 34 B.R. 762, 763–64 (9th Cir. BAP 1983). And the trustee's primary responsibility was to administer the assets of the estate for the benefit of Aguina's creditors, *see In re DBSI, Inc.*, 869 F.3d 1004, 1016 (9th Cir. 2017), even if Aguina thought he could have "handled his financial affairs in a more advantageous way outside of bankruptcy."

The trustee explained to the court that after carefully considering the ongoing dissolution proceedings and reviewing various documents concerning the potential community property assets, he concluded that the proposed settlement was "in the best interest of the estate." In various filings, he also provided the bankruptcy court with reason to believe that the potential community property assets were not of significant value and that it would be both expensive and

6

impractical to liquidate them. The bankruptcy court did not abuse its discretion in relying on this information and discounting Aguina's objection.

Aguina also argues that the court was "obliged to consider, as part of [its] 'fair and equitable' analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a sale under 11 U.S.C. § 363." *In re Thompson*, 292 B.R. at 422. After learning of the proposed settlement agreement, Aguina offered the bankruptcy estate $53,000—a "higher price" than the $49,726.77 the Kang Parties were willing to pay the trustee in fulfillment of the settlement agreement. Aguina argues that his superior offer should have led the bankruptcy court to consider a sale under section 363 or that the court should have at least provided a "reasoned explanation" for choosing not to do so. *See In re Woodson*, 839 F.2d 610, 621 (9th Cir. 1988) ("Broad as the bankruptcy court's power may be, it may not completely ignore a nonfrivolous objection, at least without giving a reasoned explanation for doing so."). We are not persuaded that the settlement amounted to an asset sale under *In re Thompson*, given the mutual release of claims. *See In re Thompson*, 292 B.R. at 421 (concluding a proposed settlement where estate unilaterally released its claims amounted to an asset sale). To the extent that the bankruptcy court was required to consider Aguina's offer, its statement that Aguina failed to present a way to "extinguish or eliminate" the Kang

Parties' most significant claims against him as creditors was ample support for its decision to approve the trustee's proposed settlement, despite Aguina's offer.

Aguina's remaining objections also fail. The bankruptcy court did indeed mention the particular facts of this case in its order; though public policy is not one of the four *A & C Properties* factors, it nevertheless supports ending a dispute that has long been a drain on taxpayer money and judicial resources; and Aguina has failed to demonstrate that the settlement agreement is illegal or allows a party to take advantage of its wrongdoing.

**AFFIRMED**.