FILED

FEB 3 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>AGUINA AGUINA,<br><br>        Debtor. | BAP No. CC-21-1163-FLS<br><br>Bk. No. 6:17-bk-17472-WJ |
| AGUINA AGUINA,<br>                Appellant,<br>v.<br>CHOONG-DAE KANG; MYUNG-JA<br>KANG; KWANG-SA KANG; KARL T.<br>ANDERSON, Chapter 7 Trustee,<br>                Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Wayne E. Johnson, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Aguina Aguina has been embroiled in contentious

dissolution proceedings and other state court litigation with his ex-wife,

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

appellee Choong-Dae Kang, for over thirteen years. He filed for bankruptcy protection, and the dispute continued in the bankruptcy court. Four years after he filed his bankruptcy petition, the bankruptcy court approved a compromise between the bankruptcy trustee and Ms. Kang and her siblings.

Mr. Aguina appeals the compromise order. We discern no error and AFFIRM.

## FACTS

### A. Prepetition events

Mr. Aguina and Ms. Kang were married in 1999. In 2008, Mr. Aguina filed an action for marital dissolution in state court. The parties finalized the divorce, but issues remained as to child and spousal support and property division.

The disputes engendered additional litigation in state court. Ms. Kang and her siblings, appellees Myung-Ja Kang and Kwang-Sa Kang (collectively, the "Kang Parties"), sued Mr. Aguina in state court on a loan that the Kang Parties' late mother had made to Mr. Aguina. The state court entered judgment in favor of the Kang Parties and against Mr. Aguina in the amounts of $497,500 for fraud and $77,000 for breach of contract.

The dissolution proceedings were extremely contentious. Mr. Aguina accused Ms. Kang of failing to disclose all of her assets and of using various corporate entities to conceal community property. Among other things, Mr. Aguina claimed that an inheritance that Ms. Kang received in

2

2011 at her father's passing was community property.

Ms. Kang did not comply with some of the family court's orders, including an order to disclose her assets. In December 2016, the family court found that Ms. Kang had failed to comply with mandatory disclosure requirements, awarded monetary sanctions against her, and issued terminating sanctions preventing her from presenting evidence on issues about which she should have made disclosures.

In 2020, the family court stated, at least preliminarily, that some of the disputed assets were no longer within its jurisdiction, including four condominium units in Japan.

## B.    Mr. Aguina's chapter 11 petition and conversion to chapter 7

Meanwhile, in September 2017, while the divorce proceedings were ongoing, Mr. Aguina filed a chapter 11 petition. Soon thereafter, the bankruptcy court converted the case to one under chapter 7. Chapter 7 trustee Karl T. Anderson ("Trustee") was appointed trustee to administer Mr. Aguina's estate.

The Kang Parties filed five proofs of claim. The first three claims (Claim 9 filed by Myung-Ja Kang, Claim 10 filed by Kwang-Sa Kang, and Claim 11 filed by Ms. Kang) asserted a secured claim for $781,454.51, based on the state court judgment described above.[2] (The judgment amount had

_____

[2] The bankruptcy court later determined that the fraud portion of the judgment that the Kang Parties had recovered against Mr. Aguina was nondischargeable under § 523(a)(2). The district court affirmed.

increased due to the accrual of postjudgment interest.) In Claim 12, Ms. Kang asserted a priority unsecured claim for $9,762.80, based on a domestic support obligation. In Claim 13, Ms. Kang asserted a general unsecured claim for $500,000, based on a pending state court lawsuit. Other creditors asserted general unsecured claims totaling about $11,000.

In January 2019, the bankruptcy court granted limited relief from the automatic stay for the state court dissolution proceedings to continue. The stay relief order stated that the stay was lifted so that the family court could determine "the characterization only of the assets of the Debtor and Ms. Kang as community property, separate property of the Debtor, or separate property of Ms. Kang." It specified that "[a]ll community property and separate property of the Debtor shall remain property of this bankruptcy estate and subject to the Trustee's administration in this case."

The Trustee joined the divorce proceedings as a party in interest and took the position that some of the assets at issue were community property and therefore were property of the estate. In a Rule 2004 examination, Ms. Kang provided documents and testimony to the Trustee supposedly establishing that the assets at issue were separate property. Ms. Kang began making monthly payments to the Trustee toward the family court sanctions.

## C.    The Trustee's motion for compromise

The Trustee filed a motion for an order approving settlement and compromise of disputes between the Trustee and the Kang Parties

("Compromise Motion"). The salient terms of the settlement agreement were as follows: (1) Ms. Kang would pay the Trustee $49,726.77; (2) the Kang Parties would waive and withdraw all claims against the estate and would not receive any distribution in the bankruptcy case; (3) the parties would exchange releases concerning certain assets; and (4) the settlement agreement would not affect anything in the state court dissolution action other than the division of assets.

The Trustee asserted that the compromise agreement comported with the standard set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), and *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).

Mr. Aguina opposed the Compromise Motion. He argued that he had cooperated with the Trustee but that the Trustee had never shared with him the information obtained from the Rule 2004 examination of Ms. Kang, and he had been unable to get necessary information about Ms. Kang's assets in any forum. He also contended that the Kang Parties' offer to withdraw and waive their proofs of claim was of little value to the estate.

Mr. Aguina offered to purchase the estate's interest in the community assets for $53,000. He argued that, because this amount was more than the cash portion of the settlement, his proposal was superior.

Mr. Aguina also argued that it was unfair for Ms. Kang to hide her assets from the family court and the bankruptcy court and then seek to settle with the Trustee without ever having to disclose her assets.

Finally, he argued that the proposed settlement would interfere with proceedings in the state court. He pointed out that the bankruptcy court had granted partial stay relief and left to the family court all issues concerning the characterization of the parties' assets.

In a reply brief, the Trustee argued that Mr. Aguina did not refute his position that Rule 9019 weighs in favor of the compromise and did not address many of the considerations raised in *A & C Properties*. He contended that Ms. Kang had provided sufficient information demonstrating that the assets at issue were her separate property. He argued that the bankruptcy court had exclusive jurisdiction over estate property and did not need to abstain or defer to the family court.

Ms. Kang joined in the Trustee's reply brief. She attached her declaration in which she discussed her interests in the various assets at issue and explained how she had inherited most of those assets from her parents after she separated from Mr. Aguina. She also traced the ownership of the condos in Japan, as well as the fraud judgment against Mr. Aguina. She attached corporate documents of her business interests and documents concerning the condo units.

## D. The hearings and supplemental briefing on the Compromise Motion

At the hearing on the Compromise Motion, Mr. Aguina objected that the Kang Parties' joinder introduced new arguments and evidence to which he had no opportunity to reply.

6

The bankruptcy court continued the hearing to allow Mr. Aguina an opportunity to respond. It also directed the settling parties to clarify some provisions of the proposed settlement agreement.

The Trustee filed a revised version of the settlement agreement, and the parties filed additional briefs.[3] Among other things, Mr. Aguina argued that the court should hold an evidentiary hearing. He did not address Ms. Kang's factual assertions concerning the assets.

At the continued hearing, the bankruptcy court granted the Compromise Motion. It analyzed each of the four *A & C Properties* factors and held that they favored the compromise. The bankruptcy court concluded that the compromise was "an elegant solution, a peaceful solution, a common solution." Mr. Aguina timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[4]

---

[3] A few days before the hearing, Mr. Aguina filed objections to the Kang Parties' five proofs of claim. The bankruptcy court later overruled the objections as moot, given that it had approved the compromise and the Kang Parties had withdrawn their claims.

[4] The Trustee argues that Mr. Aguina lacks standing to prosecute this appeal, because there is no reasonable possibility of the estate having any surplus available to pay him. However, we cannot rule out the possibility that, if we reverse on appeal, the state court might recognize Mr. Aguina's interests in enough community property to pay all administrative claims, unsecured claims, and exemptions and result in a surplus. Thus, he is a "person aggrieved" who has standing to appeal. *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983).

7

## ISSUE

Whether the bankruptcy court erred in approving the compromise between the Trustee and the Kang Parties.

## STANDARD OF REVIEW

"The bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion." *Goodwin v. Mickey Thompson Ent. Grp., Inc. (In re Mickey Thompson Ent. Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003); *see In re A & C Props.*, 784 F.2d at 1380. Similarly, "[a] court's decision whether to hold an evidentiary hearing is also reviewed for an abuse of discretion." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 939-40 (9th Cir. 2007).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.** **The bankruptcy court properly identified the** *A & C Properties* **factors to evaluate the fairness and reasonableness of the compromise.**

Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

"The bankruptcy court has great latitude in approving compromise agreements." *In re Woodson*, 839 F.2d at 620. The Ninth Circuit has directed that the bankruptcy court must determine that the compromise is "fair and equitable" based on four factors:

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Props.*, 784 F.2d at 1381 (citation omitted). The law favors compromise, "and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *Id.* (citations omitted).

"Each factor need not be treated in a vacuum; rather, the factors should be considered as a whole to determine whether the settlement

compares favorably with the expected rewards of litigation." *Grief & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017). Ultimately, "[t]he trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *In re A & C Props.*, 784 F.2d at 1381.

Moreover, the bankruptcy court "need not rule upon disputed facts and questions of law, but only canvass the issues. A mini trial on the merits is not required." *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th BAP 1997) (citations omitted). Otherwise, "there would be no point in compromising; the parties might as well go ahead and try the case." *Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (citation and quotation marks omitted).

**B.    The bankruptcy court did not err in applying the *A & C Properties* factors.**

### 1.    Probability of success

The bankruptcy court properly considered the Trustee's probability of success in the dissolution action. The Trustee represented that he had reviewed evidence and testimony from Ms. Kang that he thought likely established her assets as separate property. As a result, he was not confident that he could prevail in state court. The parties were highly combative, they had drawn out the dissolution litigation for over a decade, and any further litigation would likely require application of foreign law.

10

Given these uncertainties, it was not error for the bankruptcy court to find that this factor weighed in favor of the compromise.

Mr. Aguina argues that the court could not have properly assessed the probability of success because Ms. Kang never fully disclosed her assets. He faults the Trustee for failing to share with Mr. Aguina or the bankruptcy court the limited information that Ms. Kang had provided. He also complains that the Trustee's evaluation of the assets was insufficiently detailed.

While the Trustee could have provided more information to the bankruptcy court to support his assessment, we find no reversible error. The bankruptcy court needed only to canvass the issues and was not required to consider evidence and make factual findings as to the nature and value of each asset. *See id.*

It is also significant that, after Ms. Kang filed her declaration about her assets, the bankruptcy court continued the hearing so Mr. Aguina could respond. Inexplicably, Mr. Aguina did not take advantage of this opportunity.

Thus, the bankruptcy court did not err in relying on the Trustee's assessment as to the probability of success.

### 2. Difficulty of collection

The bankruptcy court properly considered the difficulty of collecting any judgment from the Kang Parties if the Trustee prevailed. Their attorney represented that the settlement funds were in his account, so there

would be no difficulty in collecting the settlement from the Kang Parties. Conversely, the Trustee had argued that recovery in the state court litigation would likely be extremely difficult, given that most of the assets were located abroad. The bankruptcy court did not err.

Mr. Aguina argues that the bankruptcy court could not have properly evaluated the difficulty of collection because it needed Ms. Kang's disclosure as to her assets and interests. But the bankruptcy court did not need to hold a mini-trial on the compromise; for the reasons discussed above, we reject this argument.

### 3. Difficulty of continuing litigation

Third, the bankruptcy court considered the litigation involved and the attendant expense, inconvenience, and delay. It noted that the contentious dissolution proceedings had been pending for many years and that Mr. Aguina would likely continue the litigation indefinitely if he could. Particularly in light of the parties' mutual animosity and the Trustee's estimate that it would cost at least $50,000 to resolve the state court litigation (with doubtful chances of success), the bankruptcy court did not err in concluding that continued litigation would have been expensive and difficult.

Mr. Aguina fails to address any of the bankruptcy court's well-founded concerns. Rather, he simply concedes that the complexity, difficult, and expense "might be true as to the assets the Trustee identified" yet argues it might not be true as to unknown assets. The bankruptcy court

12

did not abuse its discretion when it credited the Trustee's views based on his investigation and rejected Mr. Aguina's speculation.

### 4. Best interests of the creditors

Finally, the bankruptcy court considered the best interests of the creditors. Although Mr. Aguina argued that he could pay more than what the Kang Parties offered in settlement, the Trustee pointed out that he offered nothing comparable to the Kang Parties' waiver of their sizeable claims. The bankruptcy court did not err in finding that the compromise was in the best interests of the creditors.

Mr. Aguina does not contest this factor.[5] Instead, he only complains that the compromise was unfair to him. As discussed below, this is not a relevant consideration, and the bankruptcy court was correct to ignore it.

Accordingly, the bankruptcy court did not abuse its discretion in evaluating the *A & C Properties* factors and holding that the compromise was reasonable.

### C. We reject Mr. Aguina's attempt to augment the *A & C Properties* factors.

The bankruptcy court properly identified and applied the *A & C Properties* factors. Mr. Aguina incorrectly attempts to impose additional

---

[5] In his reply brief, Mr. Aguina argues that the creditors did not benefit from the compromise because he had already paid all remaining creditors before the second hearing on the Compromise Motion. This argument ignores the fact that the Kang Parties were also creditors, with presumptively allowed claims based in large part upon a state court judgment. Mr. Aguina offered nothing on account of those claims.

requirements.

### 1.    Sale of estate assets under § 363

Mr. Aguina argues that the bankruptcy court erred by failing to evaluate the compromise as a sale under the more rigorous standard of § 363. He is wrong.

We have held that a settlement agreement transferring estate assets must be evaluated both as a compromise under Rule 9019 and a sale under § 363. *See In re Mickey Thompson Ent. Grp., Inc.*, 292 B.R. at 421 ("[T]he disposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim . . . ."). However, we made this ruling because the claims in *Mickey Thompson* ran in only one direction:

> [T]his settlement is in essence a sale of potential claims to the Settling Parties. While the Agreement purports to act as a mutual release of claims, no party has identified any claims which the Settling Parties could assert against the estate or Trustee. The record does not contain any evidence that a release of claims by the Settling Parties has value.

*Id.*

Conversely, in the present case, the Trustee and the Kang Parties agreed to execute a mutual release of claims, and each party had claims against the other. *Cf. Fuchs v. Snyder Tr. Enters. (In re Worldpoint Interactive, Inc.)*, 335 F. App'x 669, 670 (9th Cir. 2009) ("We are not persuaded by [appellant's] contention that the settlement amounted to an asset sale

14

under [*Mickey Thompson*], because both parties to the settlement here released claims."); *Morris v. Davis (In re Morris)*, BAP No. SC-15-1222-FJuKi, 2016 WL 1254357, at *7 (9th Cir. BAP Mar. 29, 2016) ("[B]oth parties released claims, rendering the settlement a mutual compromise, rather than a sale. Accordingly, the court did not need to analyze the proposed settlement under § 363.").

The Kang Parties held large claims against the estate. The claims had substance; some of them had already been reduced to judgment. The Kang Parties agreed to waive their claims in return for (among other things) the Trustee's waiver of sanctions claims and the estate's claims to the alleged community property. Because this settlement resolved mutual claims, it was not a sale requiring scrutiny under § 363.

### 2. Fairness to Mr. Aguina

Mr. Aguina further argues that, in addition to the *A & C Properties* factors, the bankruptcy court was required to assess the fairness of the compromise to not only creditors, but also the debtor. There is no authority for this proposition because it would create an irreconcilable conflict of interest for trustees.

All litigation is risky. Plaintiffs settle cases to gain the certainty of recovering something and avoid the risk of recovering nothing. But when the plaintiff is a bankruptcy trustee, creditors and the debtor have different tolerance for litigation risk. The rewards and risks of litigation fall unequally on creditors and debtors, because creditors must get paid in full

15

before the debtor receives any distribution. Therefore, a settlement that produces money for creditors may be worthless to the debtor. This means that debtors often want the trustee to pursue risky litigation, rather than settle, in the hope that the recovery will be big enough to pay all creditor claims in full and leave something for the debtor. If the gamble does not pay off and the litigation is unsuccessful, the creditors have lost the benefit of the settlement, while the debtor is no worse off (the debtor would have gotten nothing under the settlement and still gets nothing when the litigation fails).

The bankruptcy court correctly understood that *A & C Properties* avoids this conflict. In the context of a settlement, the trustee and the court must consider the paramount interest of creditors and need not consider the debtor's interest.[6]

### 3. Public policy

Mr. Aguina also contends that the bankruptcy court failed to consider public policy when evaluating the compromise. He acknowledges that the Ninth Circuit authority does not require the bankruptcy court to examine this factor.

---

[6] *DeBilio v. Golden (In re DeBilio)*, BAP No. CC-13-1441-TaPaKi, 2014 WL 4476585 (9th Cir. BAP Sept. 11, 2014), has nothing to do with fairness of a settlement to the debtor. Rather, we reversed in that case because the bankruptcy court "approved the settlement and sale motion at the hearing without reference to the *A & C* factors or any findings to support its decision." *Id.* at *5. The bankruptcy court in this case explicitly addressed each of the *A & C Properties* factors.

Even if we were to consider public policy concerns, we would find no error. The law favors the peaceful resolution of disputes through compromise. This settlement promoted the amicable resolution of protracted and acrimonious litigation between Mr. Aguina and Ms. Kang. If anything, public policy favors the settlement over that wasteful and destructive course of action. Mr. Aguina argues that the settlement circumvented the public policy in favor of open disclosure of assets in dissolution proceedings and repeatedly references the family court's comments that "millions" in assets went missing under Ms. Kang's watch. But that was only a preliminary comment, it has never been substantiated, and the Trustee concluded after an investigation that he was satisfied with the disposition of the assets.

## D. The settlement agreement had adequate consideration.

Mr. Aguina argues that the settlement agreement lacked sufficient consideration to constitute a binding contract, because Ms. Kang did not offer anything of value that she was not already obligated to provide. We are not persuaded by this argument.

As the Trustee pointed out, the Kang Parties were waiving about $1.3 million in claims against the estate, most of which had already been reduced to judgment. This is more than enough consideration to support a contract.

Mr. Aguina's argument that the waiver was illusory is misguided. He claims that his objections to the Kang Parties' claims (filed a few days

17

before the continued hearing) demonstrated that the claims were worthless and that the bankruptcy court should have forced the Trustee to prove that the claim objections lacked merit. The fact that Mr. Aguina did not file the objections until just days before the hearing, and four years after he commenced his bankruptcy case, raises serious questions about his own confidence in his objections and his motives. In any event, the bankruptcy court was only required to canvass the issues, and, at the time it decided the Compromise Motion, the Kang Parties' claims were deemed allowed and presumptively valid. *See Garner v. Shier (In re Garner)*, 246 B.R. 617, 622 (9th Cir. BAP 2000).

### E.    The bankruptcy court did not need to defer to the family court.

Mr. Aguina argues that the bankruptcy court erred in making a final determination on the nature of the disputed property, because it had earlier lifted the automatic stay to allow the family court to decide whether the property was community or separate. He is wrong.

All of Mr. Aguina's assets, including any community property, were property of the bankruptcy estate and subject to the bankruptcy court's exclusive jurisdiction. *See* 28 U.S.C. § 1334(e)(1); § 541(a)(2); *In re DeBilio*, 2014 WL 4476585, at *3 ("The bankruptcy court has exclusive jurisdiction over property of the estate, including community property. This is so even when there is a concurrent dissolution proceeding in state court." (citations omitted)). The grant of stay relief to allow the family court to determine the nature of the disputed assets does not change this conclusion. Granting

18

relief from the stay permitted the family court to make certain determinations, but it did not remove any property from the estate or limit the bankruptcy court's jurisdiction.

In any event, the bankruptcy court did not make a final determination that the property at issue was Ms. Kang's separate property, nor did it need to. Rather, it canvassed the issues and determined that the compromise was fair and reasonable.

## F. The bankruptcy court did not err in declining to hold an evidentiary hearing.

Finally, Mr. Aguina argues that the bankruptcy court erred in rejecting his request for discovery and an evidentiary hearing.

The bankruptcy court was within its discretion when it declined to draw out the proceedings any further with discovery and an evidentiary hearing. It was not required to make factual determinations on every disputed issue, which would defeat the point of settlement. *See In re Int'l Fibercom, Inc.*, 503 F.3d at 946 (holding that, where there was an adequate factual basis for the bankruptcy court's decision, an evidentiary hearing was unnecessary); *In re Kent*, Case No. 07-BK-03238-SSC, 2008 WL 5047821, at *1 (Bankr. D. Ariz. July 25, 2008) ("Rule 9019 does not require an evidentiary hearing on every settlement agreement presented to the Court.").

## CONCLUSION

The bankruptcy court did not abuse its discretion in approving the

19

compromise between the Trustee and the Kang Parties. We AFFIRM.