ORDERED PUBLISHED

FILED

MAY 26 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>OPEN MEDICINE INSTITUTE, INC.,<br>　　　　　Debtor. | BAP No. NC-21-1233-FBS<br><br>Bk. No. 20-51678 |
| SPARK FACTOR DESIGN, INC.;<br>WORKING DIRT R2, LLC,<br>　　　　　Appellants,<br>v.<br>FRED S. HJELMESET, Chapter 7 Trustee,<br>　　　　　Appellee. | |
| In re:<br>ANDREAS M. KOGELNIK,<br>　　　　　Debtor. | BAP No. NC-21-1234-FBS<br><br>Bk. No. 21-50203 |
| SPARK FACTOR DESIGN, INC.;<br>WORKING DIRT R2, LLC,<br>　　　　　Appellants,<br>v.<br>ANDREAS M. KOGELNIK,<br>　　　　　Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Stephen L. Johnson, Bankruptcy Judge, Presiding

APPEARANCES:

Gary M. Kaplan of Farella Braun & Martel LLP argued for appellants;
Gregg S. Kleiner of Rincon Law, LLP argued for appellee Fred S. Hjelmeset;

Matthew G. Kleiner of Gordon Rees Scully Mansukhani, LLP argued for appellee Andreas M. Kogelnik.

Before: FARIS, BRAND, and SPRAKER, Bankruptcy Judges.

Opinion by Judge Faris
Concurrence by Judge Spraker

FARIS, Bankruptcy Judge:

## INTRODUCTION

This appeal arises out of "business divorce" litigation among Open Medicine Institute, Inc. ("OMI"), its founder and former principal, Dr. Andreas M. Kogelnik, and its current principals and creditors, Spark Factor Design, Inc. ("Spark Factor") and Working Dirt R2, LLC ("Working Dirt"). After OMI filed a chapter 7[1] petition and Dr. Kogelnik filed a chapter 11 petition, the bankruptcy court approved a settlement between Dr. Kogelnik and OMI's chapter 7 trustee, Fred S. Hjelmeset ("Trustee"). Spark Factor and Working Dirt appeal, arguing that the bankruptcy court failed to properly evaluate the settlement as a sale of estate assets and erred in determining that the compromise was fair and equitable.

While the Trustee could have better supported his analysis of the claims and settlement, the bankruptcy court did not abuse its discretion in relying on his business judgment. Furthermore, it did not need to treat any portion of the compromise as a sale or force the Trustee to accept the appellants' alternative proposal. We AFFIRM. We publish to clarify that bankruptcy courts do not always need to examine a compromise as a sale

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

under § 363.

**FACTS**

**A.      Prepetition events**

In or around 2008, Dr. Kogelnik formed OMI, a medical research company, and became its CEO and sole shareholder. Appellant Spark Factor and Valley Community Fund, Inc. ("VCFI") acquired the majority stake in OMI in 2019. Spark Factor's CEO and primary shareholder is Abraham Farag, and his brother is the CEO, secretary, and treasurer of VCFI. Mr. Farag's wife is the managing member of appellant Working Dirt.

Beginning in December 2019, OMI borrowed a total of $2.3 million from Spark Factor. It also borrowed $2.5 million from Working Dirt. Dr. Kogelnik personally guaranteed the loans.

In early 2020, Laura Gingher, Spark Factor's operations manager, became OMI's CFO, and later its CEO, secretary, treasurer, and board member; Mr. Farag became the chairman of OMI's board. They effectively took control of OMI's operations.

In June 2020, Spark Factor acquired additional stock in OMI to increase its equity share to ninety-three percent. By the petition date, Dr. Kogelnik owned only a five-percent interest in OMI.

Shortly after Spark Factor acquired its controlling stake in OMI, Dr. Kogelnik left his positions as CEO and director of OMI. He claimed that Mr. Farag and Ms. Gingher improperly forced him out; conversely, Spark Factor and Working Dirt asserted that the board forced him to resign due

3

to his gross mismanagement of OMI, misappropriation of its assets, and deception of lenders, investors, and others for his personal benefit.

Before Spark Factor and Working Dirt became involved in its business, OMI executed a lease for real properties in Mountain View, California. The lease required a security deposit of over $2.3 million. On September 9, 2020, Ms. Gingher executed an assignment of OMI's lease to Spark Factor, which included OMI's interest in the remaining $1.9 million security deposit. Spark Factor claimed that the lease was in default and distressed, but the Trustee contended that Spark Factor extended the lease and sublet the properties (including to OMI) at a profit.

OMI filed three state court complaints against Dr. Kogelnik and other entities, including his companies Open Medicine Clinic, Inc. ("OMCI") and Basis Diagnostics, Inc. ("Basis"). Essentially, OMI alleged that Dr. Kogelnik breached his fiduciary duties to OMI and appropriated OMI's money, resources, services, and intellectual property to benefit his other companies. The parties refer to the claims arising from these lawsuits as the "State Court Litigation Claims."

B.    The bankruptcy petitions

In November 2020, OMI filed a chapter 7 bankruptcy petition. The Trustee was appointed to administer the estate. Dr. Kogelnik filed a $1.35 million proof of claim based on prepetition loans.

The Trustee asserted that OMI had various litigation claims against the officers, directors, and insiders of OMI, including Mr. Farag, his wife

and brother, Ms. Gingher, Spark Factor, Working Dirt, and VCFI. (The parties refer to this group as the "Targeted Parties."[2]). He claimed that the Targeted Parties breached their fiduciary duties to OMI by engaging in conduct that benefitted themselves to the detriment of OMI (the so-called "BOFD Claims"). He also claimed to own the so-called "Causes of Action": "rights of set-off, recoupment rights, offsets, alter ego, veil piercing, substantive consolidation, successor liability, and other claims" against unspecified parties. The parties referred to the BOFD Claims and the Causes of Action together as the "Litigation Claims."

Meanwhile, Dr. Kogelnik filed his own chapter 11 petition. The Trustee filed an unliquidated proof of claim asserting that Dr. Kogelnik may have breached his fiduciary duties to OMI and caused financial injury to OMI. Additionally, Spark Factor and Working Dirt filed complaints against Dr. Kogelnik under §§ 523 and 727.

## C.    The Trustee's motion to compromise

The Trustee and Dr. Kogelnik eventually agreed to resolve the disputes between OMI's estate and Dr. Kogelnik. In September 2021, the Trustee filed a motion to approve a settlement agreement with Dr. Kogelnik, Basis, and OMCI (the "Kogelnik Parties").

In summary, the settlement agreement provided that the Trustee would: (1) settle the BOFD Claims, the Causes of Action, and the State

---

[2] The record does not make clear whether Dr. Kogelnik and his entities are among the Targeted Parties. However, counsel for the Trustee represented at oral argument that the Targeted Parties do not include Dr. Kogelnik and his entities.

Court Litigation Claims that the Trustee held against the Kogelnik Parties; (2) sell to Basis the estate's rights and interests in the Litigation Claims against the Targeted Parties; and (3) withdraw his proof of claim in Dr. Kogelnik's bankruptcy case. In exchange, the Kogelnik Parties agreed that: (1) Basis would pay the Trustee $200,000; (2) Basis would pursue, at its own expense, the litigation of the Litigation Claims in an adversary proceeding against the Targeted Parties and deliver to the Trustee fifty-five percent of the net recovery on those claims; and (3) Dr. Kogelnik would subordinate his claim in OMI's bankruptcy case to all allowed claims of non-insiders.

The Trustee argued that the proposed compromise comported with the four factors laid out in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986): (1) the probability of success in the litigation, (2) the difficulty, if any, to be encountered in collection, (3) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it, and (4) the paramount interest of creditors and proper deference to their reasonable views.

First, the Trustee stated that the estate had fairly low chances of success in litigation against the Kogelnik Parties. He estimated that he "has an approximately 50% chance of prevailing on the merits," that "[t]he outcome of a trial . . . against the [Kogelnik Parties] is uncertain, at best," and that "it is not at all clear if the estate would prevail in litigation against Dr. Kogelnik under claims that he breached his fiduciary duty to [OMI]

6

and that he would not be able to shield himself from these claims under a business judgment defense available to former officers and directors."

Second, the Trustee expected significant difficulties in collection, because it was doubtful that Dr. Kogelnik had meaningful assets to pay any judgment. The Trustee admitted that he "has not expressly investigated the estate's ability to collect a judgment" from the Kogelnik Parties but stated that it was unclear if there would be any distributions available to unsecured creditors. He concluded that litigation would likely be time-consuming and expensive, so "the inevitable delay in obtaining a final, non-appealable judgment, the risk of appeal, the risk that the assets of the [Kogelnik Parties] could be consumed in litigation appear to be substantial and a judgment uncollectible."

Third, the Trustee stated that litigation against the Kogelnik Parties would be very expensive. He estimated that the resolution might delay the bankruptcy proceedings by over three years. He represented that "the settlement . . . directly brings a greater benefit to the bankruptcy estate than potential litigation against the [Kogelnik Parties]."

Fourth, the Trustee argued that the settlement was in the best interests of OMI's creditors because it would result in the immediate realization of $200,000 for the estate, plus fifty-five percent of any recovery against the Targeted Parties. Additionally, the subordination of Dr. Kogelnik's claim would reduce the pool of allowed unsecured claims by $1.35 million and increase the potential distribution to other creditors.

Finally, the Trustee addressed the sale to the Kogelnik Parties of the Litigation Claims against the Targeted Parties. He stated that he was exercising his business judgment to present the sale as a private sale not subject to overbid. He represented that the Kogelnik Parties were of the opinion that the Litigation Claims were worth between $10 million and $20 million and that the probability of success at trial was between sixty and eighty percent. He stated that he found those estimates reasonable.

With regard to overbid procedures, the Trustee stated that he would not consider an overbid from any of the Targeted Parties, because they lacked incentive to prosecute the Litigation Claims against themselves. However, if the bankruptcy court allowed a Targeted Party to overbid, he requested that the court order that "the overbid must be no less than (a) $200,000 in cash and (b) $2,970,000 in additional cash for a total of $3,170,000," which allegedly represented the minimum amount that the Trustee could recover under the proposed compromise.

Spark Factor and Working Dirt objected to the Trustee's proposed compromise in relevant part because: (1) the compromise of claims was a sale that required analysis under § 363; (2) the Trustee erroneously analyzed the *A & C Properties* factors; (3) Spark Factor and Working Dirt had offered $300,000 to the Trustee plus 100 percent of recovery against the Kogelnik Parties in the State Court Litigation Claims, which was superior to the proposed agreement with the Kogelnik Parties; (4) the motion was unfair because the compromise did not allow for overbid, or, alternatively,

8

they would have to pay over $3 million to overbid; and (5) the Kogelnik Parties' litigation costs would exceed $1 million, which would decrease the amount of money available to Dr. Kogelnik's creditors.

Spark Factor and Working Dirt spent a large portion of their objection explaining Dr. Kogelnik's malfeasance. They attached the declarations of Mr. Farag and others. Mr. Farag's lengthy declaration referenced many exhibits but failed to attach exhibits A though L.

## D. Dr. Kogelnik's motion to compromise

Because Dr. Kogelnik was also in bankruptcy, the compromise required approval in both OMI's and Dr. Kogelnik's cases. Dr. Kogelnik filed his own application to approve compromise that mirrored the Trustee's motion. His points were similar to the Trustee's arguments concerning the *A & C Properties* factors but analyzed the proposed compromise from his estate's perspective.

First, with regard to likelihood of success, he estimated that he had a sixty percent chance of prevailing on his proof of claim filed in OMI's bankruptcy case, although he acknowledged some risk. With regard to the Trustee's claim filed in his case, he said that he had more than a fifty-percent chance of success.

Second, he argued that the OMI estate had little to no cash assets. Therefore, even if he prevailed, OMI likely could not pay his claim.

Finally, as to the paramount interests of the creditors, Dr. Kogelnik argued that the withdrawal of the Trustee's claim in his bankruptcy case

9

would increase the potential distribution to creditors by reducing the overall amount of creditors' claims and avoiding litigation expenses. He argued that the subordination of his claim against the OMI estate had little practical effect on his creditors because the OMI estate did not have significant assets with which to pay claims.

As to the Kogelnik Parties' purchase of the Litigation Claims, Dr. Kogelnik said that, since Basis was funding the purchase, payment of the purchase price would not negatively impact his bankruptcy estate. He estimated that the Litigation Claims were valued between $10 million and $20 million. He also estimated that his probability of success at trial was between 60 and 80 percent. Therefore, he concluded that the purchase of the Litigation Claims was reasonable from the perspective of his estate.

Spark Factor and Working Dirt objected to Dr. Kogelnik's motion, but the objection was a verbatim recitation of their objection to the Trustee's motion. In other words, they discussed the effect of the transaction on the OMI estate but did not discuss its effect on Dr. Kogelnik's estate.

E.      **The evidentiary objections**

Among other evidentiary objections, the Trustee objected to the declaration of Mr. Farag. Exhibits A through L were not attached to the declaration or otherwise provided to the court and the Trustee, so the statements relying on those exhibits lacked foundation. He also argued that Mr. Farag lacked personal knowledge to support other allegations in the declaration.

10

Two days later, and five days before the hearing, Spark Factor and Working Dirt filed Exhibits A through L in the bankruptcy court.

## F. The bankruptcy court's ruling

After holding a hearing, the bankruptcy court issued written decisions granting both motions. It declined to delve into the factual quagmire of the competing allegations, holding that Spark Factor and Working Dirt were not entitled to a "mini-trial" on the merits of the underlying claims.

The bankruptcy court agreed in part with the Trustee's evidentiary objections to Mr. Farag's declaration. It sustained his objections to certain paragraphs for lack of foundation or based on the best evidence rule; Spark Factor and Working Dirt do not challenge the other evidentiary rulings on appeal.

Turning to the Trustee's motion, the bankruptcy court held that the Trustee had established both that the sale under § 363 was proper and that the compromise satisfied the *A & C Properties* factors.

As to the likelihood of success on the merits, the court noted that the Trustee had determined that the outcome against Dr. Kogelnik was a coin flip. It stated that Trustee had shown that he "has conducted significant research into OMI and the conduct of the relevant parties, and I see no reason to doubt his judgment." It wholly rejected Spark Factor's and Working Dirt's arguments to the contrary.

Second, the bankruptcy court held that, while the Trustee did not

11

present "overwhelming evidence" of the difficulty of collection, he did show that there were "serious doubts" about whether OMI could recover anything against Dr. Kogelnik. It held that the Trustee adequately explained why he thought it would be difficult to collect against either the Kogelnik Parties or the Targeted Parties: namely, the estate did not have adequate resources to fund litigation, while Basis did. It acknowledged that the Trustee did not investigate the likelihood of collecting against Dr. Kogelnik but held that the Trustee had carried his burden nonetheless.

Third, the bankruptcy court agreed with the Trustee's representation that litigating against the Kogelnik Parties would be expensive and time-consuming. It did not credit Spark Factor's and Working Dirt's argument that the claims against Dr. Kogelnik were not complex; the voluminous documents filed in opposition to the motions contradicted that argument.

Fourth, the court found that the paramount interests of creditors favored the compromise. It recognized that Spark Factor and Working Dirt offered an alternate compromise that included more money upfront. Nevertheless, it stated that Spark Factor and Working Dirt have little incentive to vigorously pursue the Litigation Claims against themselves. It also said that the difficulty of collection against the Kogelnik Parties made recovery "at best speculative, and perhaps even illusory." It noted that Dr. Kogelnik's subordination of his claims meant that all unsecured creditors would receive more from the estate distributions. As such, it was "entirely within the Trustee's reasonable business judgment to reject

$100,000 in cash now for the possibility of a significantly higher recovery from [the Kogelnik Parties'] prosecution of the Litigation Claims against the Targeted Parties, and a greater distribution to non-insider unsecured creditors."

The bankruptcy court also rejected Spark Factor's and Working Dirt's argument that the claims the Trustee sought to sell to the Kogelnik Parties were worthless. It noted a "sharp disagreement about whose conduct drove OMI into bankruptcy" and "decline[d] to turn this compromise motion into a mini-trial on the merits of the Litigation Claims."

The bankruptcy court next considered the sale of the Litigation Claims to the Kogelnik Parties under § 363. The court stated that, out of an abundance of caution, it would apply heightened scrutiny to the sale due to Dr. Kogelnik's former status as an insider of OMI.

It first concluded that the sale had a valid business justification. Next, it held that the sale was proposed in good faith. It said that it had discretion to forego overbid procedures that are unlikely to result in better offers. It declined to indulge a "speculative" possibility and deferred to the Trustee's business judgment.

Turning to Dr. Kogelnik's motion,[3] the bankruptcy court held that

---

[3] The bankruptcy court stated that it was unclear whether Spark Factor and Working Dirt had even objected to Dr. Kogelnik's motion because they had merely duplicated verbatim their response to the Trustee's motion and did not address the compromise from the perspective of Dr. Kogelnik's estate. Nevertheless, it examined the *A & C Properties* factors as they applied to Dr. Kogelnik's motion.

13

Dr. Kogelnik had also satisfied the *A & C Properties* factors. First, it stated that Dr. Kogelnik thought he was more likely than not to prevail on his claims against OMI but acknowledged the inherent uncertainty. The court held that Dr. Kogelnik's position was reasonable.

Second, the bankruptcy court held that Dr. Kogelnik was not likely to be able to collect much of his claim against OMI, as OMI's estate did not have cash on hand or the resources to convert the Litigation Claims to cash.

Third, the bankruptcy court held that OMI's claims against him were highly factual in nature, which necessarily meant significant cost and delay for very complex litigation.

Finally, the court held that the compromise served the paramount interests of the creditors because the compromise included the withdrawal of claims against the estate that would drain estate assets. Even if the sale analysis were applicable, the sale was proper, because Basis could fund the Litigation Claims without diminishing Dr. Kogelnik's estate.

The bankruptcy court thus granted both motions. Spark Factor and Working Dirt timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in approving the compromise agreement between the Trustee and the Kogelnik Parties.

14

## STANDARD OF REVIEW

"The bankruptcy court's decision to approve a compromise is reviewed for abuse of discretion." *Goodwin v. Mickey Thompson Ent. Grp. (In re Mickey Thompson Ent. Grp.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003). Similarly, "[w]e review an order approving a § 363 sale for an abuse of discretion." *Kallman & Co. v. Gottlieb (In re Lewis)*, 515 B.R. 591, 594 (9th Cir. BAP 2014).

Additionally, "we review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant." *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    The bankruptcy court properly identified the *A & C Properties* factors to evaluate the fairness and reasonableness of the compromise.**

The bankruptcy court properly examined the compromise under

Rule 9019 and the *A & C Properties* factors. Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Rule 9019(a).

"The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). The Ninth Circuit has directed:

> It is clear that there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement. The court must also find that the compromise is fair and equitable.
>
> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:
>
> > (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Props.*, 784 F.2d at 1381 (citations omitted). "Each factor need not be treated in a vacuum; rather, the factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Grief & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017). Ultimately, "[t]he trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and

equitable and should be approved." *In re A & C Props.*, 784 F.2d at 1381.

The law favors compromise, "and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed. Thus, on review, we must determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case." *Id.* (citations omitted). Even if the bankruptcy court only made general findings supporting the compromise, "where the record supports approval of the compromise, the bankruptcy court should be affirmed." *Id.* at 1383.

Moreover, "[w]hen assessing a compromise, courts need not rule upon disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required." *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997) (citations omitted). "If the court were required to do more than canvass the issue, there would be no point in compromising; the parties might as well go ahead and try the case." *Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (cleaned up).

**B.    The bankruptcy court did not need to evaluate the compromise as a sale of estate assets under § 363.**

Spark Factor and Working Dirt argue that the bankruptcy court erred by failing to properly consider the standards of § 363 when approving the compromise. We disagree. We hold that the bankruptcy court properly analyzed the compromise as a whole under Rule 9019 and did not need to evaluate the transfer of the Litigation Claims separately under § 363.

In *Mickey Thompson*, we held that, in some circumstances, a settlement agreement transferring estate assets must be evaluated both as a compromise under Rule 9019 and a sale under § 363. 292 B.R. at 421. However, the *Mickey Thompson* rule is not as broad as Spark Factor and Working Dirt urge. *Mickey Thompson* applied the § 363 sale analysis to a settlement of litigation claims because the claims ran in only one direction:

> [T]his settlement is in essence a sale of potential claims to the Settling Parties. While the Agreement purports to act as a mutual release of claims, no party has identified any claims which the Settling Parties could assert against the estate or Trustee. The record does not contain any evidence that a release of claims by the Settling Parties has value.

*Id.*

The Ninth Circuit has examined our reasoning in *Mickey Thompson* and agreed that it is not always necessary for a bankruptcy court to treat a compromise of claims as a sale under § 363. In *Adeli v. Barclay (In re Berkeley Delaware Court, LLC)*, 834 F.3d 1036 (9th Cir. 2016), the debtor appealed the dismissal of his appeal for failure to seek a stay under § 363(m). He urged that a settlement agreement between the chapter 7 trustee and a creditor that involved the compromise of potential claims was not a sale that implicated § 363. The Ninth Circuit disagreed, holding that it was within the bankruptcy court's discretion to apply § 363:

> We agree with the BAP in *Mickey Thompson* and with our sister circuits, and hold that **a bankruptcy court has the discretion to apply § 363 procedures to a sale of claims**

18

**pursuant to a settlement approved under Rule 9019**. . . . We see no good reason why a trustee and the bankruptcy court cannot utilize the procedures of § 363 in certain settlements in order to ensure maximum value for the estate.

*Id.* at 1040 (emphasis added). We have relied on *Berkeley Delaware Court* for the proposition that the bankruptcy court has discretion to apply § 363 to the compromise of claims. *See Isom v. Hopkins (In re Isom)*, BAP No. ID-19-1198-BGL, 2020 WL 1950905, at *9 (9th Cir. BAP Apr. 22, 2020) ("Whether to impose formal sale procedures, however, is ultimately a matter of discretion that depends on the dynamics of the particular situation. . . . [T]he court need not implement bidding procedures and an auction if the case does not call for it."), *aff'd*, 836 F. App'x 562 (9th Cir. 2020); *Albert-Sheridan v. Ford Motor Credit Co. (In re Albert-Sheridan)*, BAP No. CC-19-1000-STaL, 2019 WL 7372668, at *6 (9th Cir. BAP Dec. 18, 2019) (noting the bankruptcy court's discretion per *Berkeley Delaware Court*), *appeal dismissed as moot sub nom*, *Albert v. Ford Motor Credit Co. (In re Albert)*, Case No. 20-60005 (9th Cir. Jan. 11, 2021); *Sterling v. Green (In re Esterlina Vineyards & Winery, LLC)*, BAP No. NC-16-1428-TaBS, 2018 WL 1354331, at *4 (9th Cir. BAP Mar. 13, 2018) (same), *aff'd*, 781 F. App'x 680 (9th Cir. 2019).

Unlike in *Mickey Thompson*, in the present case, the Trustee and the Kogelnik Parties had claims against each other; the transfer of the Litigation Claims was only one element of an integrated transaction settling all of those claims. Because this settlement resolved mutual claims, it was not a one-way sale requiring scrutiny under § 363. *See Fuchs v.*

*Snyder Tr. Enters. (In re Worldpoint Interactive, Inc.)*, 335 F. App'x 669, 670 (9th Cir. 2009) ("We are not persuaded by [appellant's] contention that the settlement amounted to an asset sale under [*Mickey Thompson*], because both parties to the settlement here released claims."); *In re Isom*, 2020 WL 1950905, at *10 ("[U]nlike *Mickey Thompson*, there were actual 'compromise' aspects to the settlement agreement; it was not merely a sale of an estate asset to the settling party disguised as a compromise"); *Morris v. Davis (In re Morris)*, BAP No. SC-15-1222-FJuKi, 2016 WL 1254357, at *7 (9th Cir. BAP Mar. 29, 2016) ("[B]oth parties released claims, rendering the settlement a mutual compromise, rather than a sale. Accordingly, the court did not need to analyze the proposed settlement under § 363."). In other words, *Mickey Thompson*'s requirement that the bankruptcy court examine a compromise as a sale or conduct an auction is inapplicable to this case.

Further, the purpose of the *Mickey Thompson* rule is to maximize estate assets by requiring trustees and bankruptcy courts to consider "whether there is a more attractive solution than that which the trustee has negotiated." *In re Mickey Thompson Ent. Grp.*, 292 B.R. at 421. This means that:

> When confronted with a motion to approve a settlement under Rule 9019(a), a bankruptcy court is obliged to consider, as part of the "fair and equitable" analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale. Whether to impose formal sale procedures is ultimately a

matter of discretion that depends upon the dynamics of the particular situation.

*Id*. at 421-22. In this case, Spark Factor and Working Dirt did make an alternative proposal, the Trustee considered and rejected it, and the court agreed that it was inferior to the proposed compromise. This fulfilled the purpose of the *Mickey Thompson* rule.

Spark Factor and Working Dirt rely heavily on our unpublished decision in *Mosesian v. Kavanagh (In re Golden Empire Air Rescue, Inc.)*, BAP No. EC-07-1086-JuMkPa, 2007 WL 7540946 (9th Cir. BAP Oct. 25, 2007). In that case, we held that the bankruptcy court needed to evaluate a proposed settlement between two bankruptcy estates and a creditor as both a compromise under Rule 9019 and a sale under § 363. However, the proposed compromise involved only the trustees' sale of the estates' causes of action to the creditor for cash and a percentage of the recovery. *Id.* at *2. The proposed agreement was a one-way sale; the creditor did not relinquish any of his rights against the estates. *Id.* at *5 ("[Settling creditor] is also not giving up any portion of its claim against the estates. Thus, this aspect of the compromise involves a sale subject to § 363(b)."). *Golden Empire Air Rescues* is inapposite and does not affect our conclusion here.

Therefore, the bankruptcy court did not need to analyze whether the compromise transaction comported with § 363.[4]

---

[4] Even if the § 363 analysis was required for approval of the compromise, we would discern no abuse of discretion. "To satisfy § 363, the sale must be proposed in good faith and for a proper purpose and realize optimal value . . . for the estate under

21

**C.  The bankruptcy court did not abuse its discretion in granting the Trustee's motion.**

The bankruptcy court determined that the compromise was fair and equitable to OMI's estate, largely relying on the Trustee's business judgment. Although the Trustee's analysis should have been more thorough, we cannot say that he failed to minimally carry his burden. We defer to the bankruptcy court's findings.

**1.  Probability of success**

The bankruptcy court agreed with the Trustee's assessment that the probability of success was low. The Trustee stated in his declaration that he had a fifty-percent chance of success against the Kogelnik Parties and that the outcome "is uncertain, at best." He explained that, as to Dr. Kogelnik, it was unclear whether OMI's estate could prevail, given that Dr. Kogelnik had viable defenses. The court described the odds of success as a "coin flip." This finding was adequately supported by the record.

Spark Factor and Working Dirt argue that the Trustee did not provide an adequate factual basis for such an assessment and the court

---

the circumstances." *Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 833 F. App'x 116, 119 (9th Cir. 2020) (cleaned up). The bankruptcy court found that the Trustee had a valid business purpose and had proposed the sale in good faith. It also found that, under the circumstances, the sale of the Litigation Claims to the Kogelnik Parties would ensure optimal value to OMI's estate. Although there was no formal auction, the court did consider the alternative transaction that Spark Factor and Working Dirt proposed and agreed that the settlement with Dr. Kogelnik was more valuable than the alternative offered by Spark Factor and Working Dirt. The court's findings were not clearly erroneous.

erred by ignoring their evidence as to the valuation of OMI's estate's claims. But the bankruptcy court was not required to consider evidence and make factual findings as to the nature and value of each claim; it needed only to "canvass the issues." *In re Schmitt*, 215 B.R. at 423. In any event, the Trustee stated that he had investigated the claims, and it was not error for the court to rely on his assessment.[5]

Spark Factor and Working Dirt again make much of our decision in *Golden Empire Air Rescue*. In that case, we reversed the bankruptcy court's approval of a compromise and held, among other things, that the bankruptcy court had not properly evaluated the *A & C Properties* factors. Unlike in this case, however, we noted that "[t]he record contains no evidence regarding the [trustee's claims] or a discussion of the *A & C Properties* factors in relation to those claims . . . ." 2007 WL 7540946 at *6. With regard to the first factor, we faulted the settling parties for "rest[ing] upon the conclusory statements in their declarations . . . rather than submit[ting] any evidence[,]" failing to identify the claims at issue or weighing the likelihood of recovery, failing to engage in a cost-benefit analysis, and offering "no evaluation at all . . . ." *Id.*

---

[5] Spark Factor and Working Dirt also argue that the bankruptcy court erred in evaluating the value to the estate of Dr. Kogelnik's agreement to subordinate his claim in OMI's bankruptcy case, because it is "essentially valueless." But as the bankruptcy court pointed out, proofs of claim are presumed valid, and neither Spark Factor nor Working Dirt ever objected to the claim. *See Garner v. Shier (In re Garner)*, 246 B.R. 617, 620-21 (9th Cir. BAP 2000) ("[A] proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim.").

Conversely, in this case, the Trustee stated in his declaration that he had evaluated the claims and was uncertain of his success on the merits if he were to pursue OMI's claims against the Kogelnik Parties. The Trustee expressed his concern over the chances of success in pursuing the estate's claims against both Dr. Kogelnik and the Targeted Parties and thought it was safer to settle with the Kogelnik Parties and sell the claims against the Targeted Parties. The Trustee could and should have offered a more reasoned analysis for his evaluation and, more broadly, for his overall decision to compromise. Nevertheless, given the uncertainties described above, it was not error for the bankruptcy court to accept his assessment without undertaking a mini-trial on the merits of the underlying claims.

## 2. Difficulty of collection

The bankruptcy court considered the Trustee's difficulty of collecting on OMI's proof of claim from Dr. Kogelnik or any judgment from the Targeted Parties. The court stated that the Trustee had "serious doubts" about collecting against the Kogelnik Parties. Spark Factor and Working Dirt argue on appeal that this was error because it was based completely on the Trustee's conjecture. We disagree; it was not error to rely on the Trustee's business judgment.

In analyzing OMI's claims against the Kogelnik Parties, the Trustee admitted that he did not expressly investigate the likelihood of collecting against them or their assets. Nevertheless, he concluded that, "[g]iven the cost of litigation with the [Kogelnik Parties] . . . , the inevitable delay in

24

obtaining a final, non-appealable judgment, the risk of appeal, the risk that the assets of the Buyer could be consumed in litigation appear to be substantial and a judgment possibly uncollectable."

The Trustee's admission that he failed to conduct any investigation into the assets of or likelihood of collection against the Kogelnik Parties is particularly troubling. A bald assertion that a judgment is uncollectable makes it hard for a court to assess whether a compromise is really fair and equitable to the estate. We note, however, that Spark Factor and Working Dirt did not offer any evidence to contradict the Trustee's opinion.

Spark Factor's and Working Dirt's continued reliance on *Golden Empire Air Rescue* is unavailing; in that case, the settling parties presented "no evidence" regarding collecting any judgment and "no analysis" of assets likely to be recovered. *See* 2007 WL 7540946, at *6. Conversely, the Trustee here presented his declaration explaining his reasoning, including the difficulty in actually collecting any judgment, and the bankruptcy court did not err in deferring to the Trustee's assessment.

Further, a settlement can satisfy the *A & C Properties* test even if the evidence supporting one or more of the four factors is relatively weak. All four factors must be considered as a whole, and not individually in a vacuum, to ascertain whether the settlement is a good deal compared to litigation. *See In re W. Funding Inc.*, 550 B.R. at 851. Thus, even though the Trustee offered little or no information about the collectability of a judgment, the court did not err in approving the settlement based on the

25

other factors.

### 3. Difficulty of continuing litigation

Spark Factor and Working Dirt did not assign any error to the third factor, the litigation involved and the attendant expense, inconvenience, and delay. We discern no error with the bankruptcy court's findings.[6]

### 4. Best interests of the creditors

Finally, the bankruptcy court considered the best interests of the creditors. Spark Factor and Working Dirt argue that they offered a superior compromise. The bankruptcy court did not err when it ruled, without conducting a mini-trial, that the entire compromise was in the best interests of the creditors. It held that Spark Factor's and Working Dirt's offer to purchase the Litigation Claims was not superior in the long run, because they had no incentive to vigorously litigate the claims against themselves, and OMI's estate would likely recover nothing other than the initial cash payment. It agreed with the Trustee's assessment that the extra $100,000 offered by Spark Factor and Working Dirt (and full recovery on the State Court Litigation Claims) paled in comparison to the possible recovery under the compromise. It also rejected Spark Factor's and Working Dirt's

---

[6] Even if we were to further review this factor, we would find no abuse of discretion. The Trustee explained why litigation would be complex, expensive, and drawn out. The bankruptcy court credited his estimate that litigation costs would be substantial and that the estate had no funds on hand. It found that the litigation would also be time-consuming, complex, and fact-intensive, as evidenced by the voluminous exhibits filed by Spark Factor and Working Dirt. The bankruptcy court's findings were supported by the record, and we defer to them.

argument that their interests outweighed the interests of the other creditors.

We agree with the court's reasoning. It did not abuse its discretion when it determined that the interests of all the creditors – not just Spark Factor and Working Dirt – would be better served by the potential for a significantly larger recovery in the future. Spark Factor and Working Dirt again cite *Golden Empire Air Rescue*, but, unlike in the present cases, in that case "the interests of the creditors . . . was not discussed" and the bankruptcy court abused its discretion because "[t]he trustees failed to present any evidence to substantiate their argument that the compromise was in the best interests of the estates." 2007 WL 7540946, at *6.

Additionally, the bankruptcy court did not need to defer to the wishes of the objecting creditors simply because they held the majority of claims in the two bankruptcy cases. *See Davis v. Jackson (In re Transcon. Energy Corp.)*, 764 F.2d 1296, 1299 (9th Cir. 1985) (In evaluating the best interests of the creditors, "[i]t is well settled that the bankruptcy court and the trustee should carefully consider the wishes of a majority of the creditors, but that those wishes are not binding."); *see also In re Vazquez*, 325 B.R. 30, 37 (Bankr. S.D. Fla. 2005) ("Such a 'veto power' [over a compromise] would run counter to the very idea that the court's task is to independently assess the proposed compromise. 'Proper deference to [the creditor's] reasonable views' is not the same as saying that the court must defer to the creditor simply because the only creditor (or a majority of

creditors) does not think the settlement is fair."). Spark Factor and Working Dirt do not offer any authority to the contrary. Even *Golden Empire Air Rescue* instructs that the relative size of a creditor's claim is not determinative: "Although [settling creditor] has large claims in both estates, its support cannot predominate over the interests of the creditors as a whole." 2007 WL 7540946, at *6.

Spark Factor and Working Dirt argue that the bankruptcy court ignored the best interests of the creditors when it refused to let them overbid. It is true that the Trustee requested a private sale of the Litigation Claims that precluded any overbids and, if the court allowed overbids, proposed onerous terms for overbidders. But the bankruptcy court has discretion to refuse to allow overbids.[7] As we noted in *Mickey Thompson*, "[w]hether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation." 292 B.R. at 422. The bankruptcy court's decision not to permit formal overbids,

---

[7] The overbid procedures proposed by the Trustee are questionable. They were built on the Trustee's estimate of the potential value of the Kogelnik Parties' settlement to the OMI estate. But, as we have noted, the Trustee's analysis of that settlement was less than ideal. Further, the difficulty of formulating an overbid procedure illustrates why *Mickey Thompson* does not apply to settlements of mutual claims. Valuing different potential settlements of such claims is often a matter of informed judgment rather than mathematical calculation and requires one to compare apples with oranges. It does not make sense to require an auction where bids cannot be readily compared. In any event, the bankruptcy court did not approve any overbid procedure and did compare the competing proposals carefully. We find no error.

but instead to compare the two proposed settlements, was not error.[8]

## D. The bankruptcy court did not abuse its discretion in granting Dr. Kogelnik's motion.

Dr. Kogelnik filed his own motion to approve compromise. Spark Factor and Working Dirt submitted a carbon copy of their objections to the Trustee's motion in the OMI case.[9] In so doing, they ignored the fact that the transaction had to be evaluated from two different perspectives in the two different cases. They provided the bankruptcy court with no reason to reject the compromise in Dr. Kogelnik's case, and we find none on appeal.

The fourth *A & C Properties* factor is the sole ground for appeal in Dr. Kogelnik's bankruptcy case. Spark Factor and Working Dirt argue that any of Basis' money used to purchase the Litigation Claims or to litigate those claims would reduce the money that could be paid out to creditors. They point to statements indicating the Basis would fund Dr. Kogelnik's plan made by Dr. Kogelnik after they had appealed to this Panel. However, we will not consider events and evidence that were not before the

---

[8] Spark Factor and Working Dirt again cite *Golden Empire Air Rescue* for the proposition that the court was required to set up formal bidding procedures when another entity is interested in bidding. However, in that case, we held that the bankruptcy court erred by failing to "recognize that the compromise involved the sale of estate property, which had a value that could be maximized by overbid." 2007 WL 7540946, at *7. We have explained above why this case did not implicate a § 363 sale.

[9] Spark Factor and Working Dirt argue that their objection addressed the paramount interests of Dr. Kogelnik's creditors, when they stated that they did not want Dr. Kogelnik to waste assets litigating cases with low chances of success.

bankruptcy court in the first instance.[10] *See Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("Evidence that was not before the lower court will not generally be considered on appeal."). Further, the fact that Basis was willing to fund Dr. Kogelnik's plan does not imply that Basis could be forced to pay Dr. Kogelnik's creditors. In order to collect from Basis, Spark Factor and Working Dirt would have to prevail on a theory of alter ego, piercing the corporate veil, or the like. They made no such case to the bankruptcy court.

Alternatively, Spark Factor and Working Dirt argue that the bankruptcy court wrongly ignored their evidence that the Litigation Claims were valueless. But as we stated above, the bankruptcy court only needed to canvass the issues and was satisfied that the claims could potentially realize significant value for Dr. Kogelnik's estate.

Spark Factor and Working Dirt argue that their interests as the majority creditors should supersede that of the other creditors in Dr. Kogelnik's bankruptcy case. As the bankruptcy court correctly noted, the compromise will benefit all creditors, and it need not disregard the interests of creditors holding smaller claims. *See In re Transcon. Energy*

---

[10] Spark Factor, Working Dirt, and Dr. Kogelnik filed motions for judicial notice. Dr. Kogelnik opposed Spark Factor's and Working Dirt's motion. We GRANT Spark Factor's and Working Dirt's request to take judicial notice of the claims register but DENY the balance of their motion because they ask us to review status conference statements filed after the court issued the orders on appeal. We GRANT Dr. Kogelnik's motion and take judicial notice of Spark Factor's and Working Dirt's objection to the Trustee's motion to approve compromise filed in the OMI bankruptcy case.

*Corp.*, 764 F.2d at 1299.

**E.    The bankruptcy court did not err in excluding portions of Mr. Farag's declaration.**

Spark Factor and Working Dirt argue that the court erred in striking portions of Mr. Farag's declaration. We disagree.

Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Additionally, the best evidence rule provides that the original of a "writing, recording, or photograph" generally is required to prove the contents thereof. Fed. R. Evid. 1002.

Exhibits A through L were not attached to Mr. Farag's declaration, and he did not explain their absence. The bankruptcy court thus properly excluded the statements in his declaration that only referenced the missing exhibits or relied on documents that were not submitted. *See Groppi v. Barham*, 157 F. App'x 10, 11-12 (9th Cir. 2005) ("The district court did not abuse its discretion in applying the best evidence rule to exclude [the] declaration because [appellant] failed to provide the records upon which the declaration was based and failed otherwise to explain their absence.").

Spark Factor and Working Dirt do not contest the applicable law. Instead, they argue that they eventually filed the missing exhibits. But they did so eight days after they filed their objection, two days after the Trustee filed his reply brief and objection to the declaration, and five days before

31

the hearing on the motions, and they did not offer any explanation for the late filing. The bankruptcy court was not obligated to consider the late-filed exhibits, particularly when the deadline to file an objection under the local rules had long passed and the Trustee had already filed his reply brief. *See* Bankr. Local Rule 9014-1(c)(1) ("Any objection shall be filed and served . . . at least 14 days prior to the actual scheduled hearing date."); *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983) ("District courts have broad discretion in interpreting and applying their local rules.").[11]

Furthermore, even if the bankruptcy court abused its discretion, such error was harmless. By Spark Factor's and Working Dirt's own admission, the excluded exhibits and statements "detailed misconduct by Kogelnik supporting the OMI Estate Claims . . . ." The bankruptcy court was not required to hold a "mini-trial" on the merits of the parties' claims, so the inclusion of those exhibits and statements would not have made any difference. The court's refusal to consider evidence of the merits of the underlying claims does not change our ruling here.

## CONCLUSION

The bankruptcy court did not abuse its discretion in approving the

---

[11] Spark Factor and Working Dirt argue that the bankruptcy court erred by faulting them for not filing the exhibits, when they had actually filed the exhibits, albeit untimely. This is a distinction without a difference, as the court properly exercised its discretion to ignore the late-filed exhibits. Furthermore, they argue that the Trustee should have sought an extension of time to review the exhibits, but he was not obligated to do so to accommodate Spark Factor's and Working Dirt's tardiness.

compromise between the Trustee and the Kogelnik Parties. We AFFIRM.

Concurrence begins on next page.

SPRAKER, Bankruptcy Judge, concurring:

I concur with the majority as to the Rule 9019 analysis and the result reached. I write separately to express my reservations as to the application of § 363. In short, I believe that the bankruptcy court was required to consider the transfer of OMI's claims against the Targeted Parties as a sale under § 363. The court did so, and I see no error in its analysis given the context of the proposed transaction as a whole.

The Trustee sought court approval of a transaction with insiders that involved multiple pieces. The proposed transaction involved the settlement and release of mutual claims against some of the parties (OMI and the Kogelnik Parties) invoking Rule 9019 and the *A & C Properties* analysis previously discussed. But the transaction also required the Trustee to "sell and assign to Basis the estate's rights, title and interest in and to the Litigation Claims against the Targeted Parties." This component did not involve mutual releases amongst the parties. Rather, it represents the sale of an estate asset that must be analyzed under § 363. *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 287 (9th Cir. BAP 2005); *see also In re Golden Empire Air Rescue, Inc.*, 2007 WL 7540946 at *4.

As explained by the majority, our prior decision in *Mickey Thompson* governs this situation. There, a chapter 7 trustee rejected an offer to purchase the estate's litigation claim in favor of the previously noticed settlement with the debtor and other entities. The panel recognized the proposed settlement was "in essence a sale of potential claims to the

Settling Parties," because though the agreement with the trustee included mutual releases, there was no evidence that the settling parties had any claims against the estate such that their release had any value. 292 B.R. at 421. Given a trustee's duty to maximize the recovery for the estate, we recognized the nexus between settlements reviewed under Rule 9019 and the sale of estate assets under § 363:

> In short, on this record we specifically reject the argument advanced by Settling Parties and Trustee that the procedures normally contemplated by section 363 motions do not apply in the context of the review of settlements under Rule 9019(a) where the result of the transaction would be to dispose of property of the estate. Rather, section 363 and Rules 6004 and 9019(a) may overlap when property of the estate would be disposed of by way of a settlement.

*Id.*; *see also In re Berkeley Del. Ct., LLC,* 834 F.3d at 1040 ("[A] compromise of a claim of the estate is in essence a sale of that claim to the defendant." (cleaned up)).

The majority has distinguished *Mickey Thompson* based on the existence of mutual claims between OMI on the one hand, and Dr. Kogelnik and his entities on the other. They explain that where the estate seeks to resolve its dispute with the target of those claims, the bankruptcy court has the discretion to evaluate the settlement under § 363, as well as Rule 9019. *In re Berkeley Del. Ct., LLC*, 834 F.3d at 1040; *In re Albert-Sheridan,* 2019 WL 7372668 at *6; *In re Esterlina Vineyards & Winery*,

2

2018 WL 1354331 at *4. Based on the mutuality of claims between the estate and the Kogelnik Parties, the majority concludes that *Mickey Thompson* does not require any analysis under § 363 though the court had the discretion to apply a § 363 analysis. This is the sole point of my disagreement with the majority. The estate sought more than the mutual resolution of claims between the estate and the Kogelnik entities. It also sold its third-party claims to Basis. This aspect of the transaction triggered § 363 and the concomitant analysis. *In re Mickey Thompson Ent. Grp.*, 292 B.R. at 421; *In re Lahijani*, 325 B.R. at 287; *see also In re Isom*, 2020 WL 1950905 at *9-10 (holding that circumstances of a transaction involving both a settlement and a sale did not require an auction under § 363). That the Trustee included the sale of its claims against other **non-settling** parties as part of the estate's overall agreement with the Kogelnik Parties did not negate the application of § 363.

Admittedly, the analysis of the sale of an estate asset within a larger settlement can be equal parts art and science. The court's evaluation ultimately depends on the context of the specific case. *Mickey Thompson* recognized the court's discretion in such situations where a sale analysis is implicated within a settlement:

> When confronted with a motion to approve a settlement under Rule 9019(a), a bankruptcy court is obliged to consider, as part of the "fair and equitable" analysis, whether any property of the estate that would be disposed of in connection with

3

> the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale. Whether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation.

*In re Mickey Thompson Ent. Grp.*, 292 B.R. at 421-22. The particular dynamics of the Kogelnik transaction entitled the court to consider the relationship between the sale and the settlement when evaluating it under § 363. *See generally In re Isom*, 2020 WL 1950905 at *9-10. The bankruptcy court did just that.

The Trustee was tasked to administer competing litigation claims largely sounding in breach of fiduciary duty against a group of current and former insiders. The very nature of these claims hampers any exacting valuation or comparison and realistically limited the universe of potential purchasers to the targeted insiders. Maximizing the return for the estate in this instance required the Trustee to promptly evaluate the competing sets of litigation claims and determine the most appropriate manner to administer those claims. The Trustee explained that after initially reviewing the panoply of issues involving OMI, Dr. Kogelnik, his related parties, and the Targeted Parties, he believed that the $200,000 in cash, the subordination of Dr. Kogelnik's claim, and the right to collect 55% of any recovery against the Targeted Parties was superior to the counteroffer from the Targeted Parties to pay $300,000 and provide 100% of any recovery

4

from the same claims plus any recovery from Dr. Kogelnik.

The Trustee, and the court, understandably discounted the Targeted Parties' chances for recovery from claims against themselves and noted that the claims against Dr. Kogelnik, who remained in chapter 11, were unlikely to generate a meaningful return. The court accepted the Trustee's evaluation that the Kogelnik Parties' prosecution of claims against the Targeted Parties was more valuable to the estate and presented the opportunity for a larger return. Given that the Targeted Parties and Dr. Kogelnik were realistically the only potential purchasers, and the significant disparity in the Trustee's valuation of the claims depending on which group purchased them, the court properly considered the sale of the claims, exercised its discretion, and declined to require overbids. *In re Isom*, 2020 WL 1950905 at *9 ("[T]he court need not implement bidding procedures and an auction if the case does not call for it." (citing *In re Esterlina Vineyards & Winery*, 2018 WL 1354331 at *4)).

I fully agree with the majority that more detail supporting the Trustee's conclusory valuation of the settlement would have been helpful. In this instance, however, the Trustee made a considered choice to accept the settlement package that ensured the prosecution of claims against the Targeted Parties which he valued as more meaningful than what the Targeted Parties offered. The Trustee sufficiently explained why the Kogelnik Parties' offer not only was fair and equitable but also would maximize the return to the estate. While the Targeted Parties disagree as to

5

the Trustee's valuation of the litigation claims, including those asserted

against them, they have not established error.